*In re: O.P.*
No. 26, September Term 2019


**Civil Procedure – Appeals – Mootness – Issues Capable of Repetition Yet Evading Review.** A juvenile court denied a request by a local department of social services to continue temporary emergency shelter care of an infant alleged to be a child in need of assistance ("CINA"). The department and counsel for the infant appealed that decision, contending that the juvenile court applied an incorrect standard of proof. The child's mother contested whether there is appellate jurisdiction for such an appeal. The department later decided to refrain from seeking shelter care when the child's parents agreed that the child was a CINA and the juvenile court issued orders governing the parents' conduct. Although an appellate court ordinarily will not decide a moot issue, the issues presented in this appeal would be considered under an exception to the mootness doctrine for cases that raise an issue "capable of repetition, yet evading review."


**Civil Procedure – Appeals – Collateral Order Doctrine**. A juvenile court's order denying continued temporary shelter care during the pendency of a CINA case was appealable under the collateral order doctrine because that order (1) conclusively determined (2) an important disputed question, (3) that is separate from the merits of the CINA case and (4) that would be effectively unreviewable if the appeal awaited final judgment in the CINA case.


**Family Law – Child in Need of Assistance – Shelter Care – Standard of Proof**. To decide whether to continue emergency shelter care of a child in a pending CINA case for a temporary period of up to 30 days, a juvenile court must find reasonable grounds (1) that return of the child to the child's home is contrary to the safety and welfare of the child and (2) either that removal of the child from the child's home is necessary due to an alleged emergency situation and in order to provide for the safety of the child or that reasonable efforts were made but unsuccessful in preventing or eliminating the need to remove the child from the home. Any continuation of shelter care beyond 30 days must be based upon findings made applying a preponderance of evidence standard at the adjudicatory stage of the CINA case.
Maryland Code, Courts & Judicial Proceedings Article, §§3-815(d), 3-817.

Circuit Court for Anne Arundel County
Case No. C-02-JV-18-000692
Argument: December 6, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 26

September Term, 2019

_____

IN RE: O.P.

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Harrell, Glenn T., Jr.
(Senior Judge, Specially
Assigned),

JJ.

_____

Opinion by McDonald, J.

_____

Filed: August 14, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Under State law, a local department of social services that has reason to believe that a child is a victim of abuse or neglect may initiate an action in a juvenile court to have the child declared a "child in need of assistance" – commonly known by the acronym "CINA." If the juvenile court ultimately finds that the child is a CINA, further proceedings ensue to provide the necessary assistance to the child.

This appeal relates to the period during which the CINA case is pending. Upon receiving the allegations of abuse or neglect on which the CINA case is based, a local department is authorized to place the child in emergency shelter care if it believes certain statutory criteria are met. However, it immediately falls to the juvenile court to hold a hearing to assess whether those criteria are satisfied and whether the temporary shelter care should continue for up to 30 days while the abuse or neglect allegations are adjudicated in the CINA case. This appeal concerns the standard of proof that the juvenile court is to apply in making that temporary shelter care decision.

In this case, an infant, whom we shall refer to as "O.P.," was hospitalized with serious unexplained brain injuries several days after an incident at home where he stopped breathing. Petitioner Anne Arundel County Department of Social Services (the "Department"), alleging that the injuries were the result of abuse or neglect, placed him in emergency shelter care and immediately filed a CINA petition with a request for continued temporary shelter care pending resolution of the CINA petition. Pursuant to statute, the Circuit Court for Anne Arundel County, sitting as a juvenile court, held a hearing on the request for continued temporary shelter care. Conflicting evidence was presented as to whether O.P.'s brain injuries occurred at home or while he was in the neonatal intensive

care unit for seven weeks after his birth. The juvenile court denied the Department's request for continued shelter care, finding that the Department had failed to establish the statutory criteria by a preponderance of the evidence. O.P. was returned to the custody of his parents.

On appeal, the Department and the counsel appointed for O.P. challenged the juvenile court's use of a preponderance standard for determining whether to authorize continued shelter care. The Court of Special Appeals held that the juvenile court used the correct standard of proof. Concluding that the juvenile court's fact findings were not clearly erroneous and that it did not abuse its discretion in denying continued shelter care, the intermediate appellate court affirmed the juvenile court's decision.[1]

The Department and counsel for O.P. pursued a further appeal to this Court. However, in the meantime, the parties reached a settlement in the CINA case under which O.P. was declared a CINA, but remained with his parents subject to the Department's supervision. This rendered moot the Department's request to place him in shelter care. Although the issue of shelter care in this particular case is moot, we exercise our discretion to decide the legal issues presented by the parties – the appealability of a shelter care decision and the appropriate standard of proof to be applied in a shelter care proceeding – because these are issues "capable of repetition, yet evading review."

We hold that a juvenile court's decision to deny continued shelter care is appealable under the collateral order doctrine. With respect to the standard of proof to be applied by

---

[1] *In re O.P.,* 240 Md. App. 518 (2019).

2

the juvenile court in such a proceeding, the court may authorize continued shelter care under the relevant statute for up to 30 days if it finds reasonable grounds to conclude that (1) return of the child to the child's home is contrary to the safety and welfare of the child and (2) either (i) removal from the home is necessary due to an alleged emergency situation and in order to provide for the safety of the child, or (ii) reasonable efforts were made to eliminate the need to remove the child from the home, but were unsuccessful. The juvenile court need not make those findings by a preponderance standard, although it must do so to extend shelter care beyond 30 days.

# I

## Shelter Care Proceedings in CINA Cases

The law governing CINA proceedings must accommodate both a vital constitutional and human right with the State's special responsibility for the welfare of children. The liberty interest of parents to raise their children as they see fit without undue interference by the State is a fundamental right under the Fourteenth Amendment of the United States Constitution. *In re Yve S.*, 373 Md. 551, 565 (2003). However, "the best interests of the child may take precedence over the parent's liberty interest in the course of a custody, visitation, or adoption dispute." *Boswell v. Boswell*, 352 Md. 204, 219 (1998). Moreover, "[t]hat which will best promote the child's welfare becomes particularly consequential where the interests of a child are in jeopardy, as is often the case in situations involving sexual, physical, or emotional abuse by a parent." *In re Mark M.*, 365 Md. 687, 706 (2001). Under the doctrine of *parens patriae*, the State has an interest, and a responsibility, to protect the health, safety, and welfare of children. *In re Yve S.*, 373 Md. at 569. In

3

fashioning the CINA statute, the General Assembly has been cognizant that the law must accommodate these sometimes competing interests.[2]

The central issue in this appeal concerns the standard of proof that a juvenile court is to apply in determining whether to authorize continued shelter care for a child after that child has been removed from the home pending the outcome of a CINA proceeding. To place this issue in context, we provide a brief overview of the statutory scheme pertaining to CINA cases generally and shelter care proceedings in particular.

**A.     *CINA Cases***

The procedures governing proceedings when a child is alleged to be a CINA are set forth in Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §3-801 *et seq.* A CINA is a child who requires court assistance because he or she has been abused or neglected, or has a developmental or mental disability, and there is no a caretaker to give proper attention to the child's needs. CJ §3-801(f), (g). Related provisions concerning child abuse and neglect are found in Maryland Code, Family Law Article ("FL"), §5-701

---

[2] The Legislature has identified the purposes of the CINA statute as, among other things, "[t]o provide for the care, protection, safety, and mental and physical development of any child coming within the provisions [of the CINA statute]" and "[t]o conserve and strengthen the child's family ties and to separate a child from the child's parents only when necessary for the child's welfare." Maryland Code, Courts & Judicial Proceedings Article, §3-802(a)(1), (3).

*et seq.*[3]   The Maryland Rules complement these provisions in specifying some of the procedures applicable to CINA cases.  *See* Maryland Rule 11-101 *et seq.*[4]

*Petition Alleging Child is a CINA*

If a local department of social services receives a complaint of child abuse or neglect, and it concludes that the juvenile court has jurisdiction and that filing a CINA petition is in the child's best interests, the local department must file a petition alleging that the child is a CINA and setting forth supporting facts.  CJ §§3-809(a), 3-811(a)(1).  Once a petition has been filed, the juvenile court may order the local department to conduct a study concerning the child, the child's family, the child's environment, and other matters relevant to the case.[5]  CJ §3-816(a).  As a part of a study, the court may order that the child or any parent or guardian be examined by a physician, psychiatrist, psychologist, or other professionally qualified person.  CJ §3-816(b).

The juvenile court proceeding to determine whether the child is a CINA consists of two stages – an adjudicatory hearing and a disposition hearing.

---

[3] FL §5-703(a) provides that "[t]he provisions of this subtitle are in addition to and not in substitution for the provisions of Title 3, Subtitle 8 of the Courts and Judicial Proceedings Article."

[4] These rules are currently in the process of being revised to recognize, among other things, the statutory separation of CINA proceedings from other juvenile causes.  *See* Part III.C.3 of this opinion.

[5] In addition, FL §5-706 requires that the local department conduct a thorough investigation of any report of child abuse or neglect and provides certain parameters for investigations.

5

*Adjudicatory Stage*

As a first stage in resolving a CINA petition, the juvenile court is to hold an adjudicatory hearing to determine whether the department's factual allegations in the CINA petition are true. CJ §§3-801(c), 3-817(a); Maryland Rule 11-114. At the adjudicatory hearing, the rules of evidence apply and the allegations in the petition must be proved by a preponderance of the evidence. CJ §3-817(b)-(c); Maryland Rule 11-114(e).

*Disposition Stage*

If the court finds that the allegations in the petition are true, the court then holds a separate disposition hearing to determine whether the child is, in fact, a CINA and, if so, the nature of any necessary court intervention. CJ §§3-801(m), 3-819(a). Although the disposition hearing is "separate" from the adjudicatory hearing, the two hearings are ordinarily to be held on the same day. CJ §3-819(a). At the disposition stage, it is left to the discretion of the juvenile court whether to insist on strict application of the rules of evidence.[6] Maryland Rule 5-101(c)(6). The court may find that the child is not a CINA and dismiss the case. CJ §3-819(b)(1)(i). Alternatively, the court may determine that the child is a CINA, in which case it may take one of three actions: (1) decide not to change the child's current custody; (2) commit the child to the custody of a parent, relative, or another suitable individual; or (3) commit the child to the custody of the local department

---

[6] A report resulting from any study that the court has directed the local department to undertake is admissible as evidence at the disposition hearing, but not at the adjudicatory hearing. CJ §3-816(c).

of social services or the Maryland Department of Health. CJ §3-819(b)(1)(iii).[7] If the child is placed out of the home, the court must later hold a permanency planning hearing to determine a permanency plan for the child. CJ §3-823(b). Those proceedings are not pertinent to the issues before us and are beyond the scope of this opinion.

## B.      *Shelter Care Proceedings*

*Shelter Care*

Under certain circumstances, the CINA statute authorizes the placement of a child alleged to be a CINA in emergency shelter care prior to disposition of the CINA petition. CJ §3-815(a). Shelter care is defined as "a temporary placement of a child outside of the home at any time before disposition." CJ §3-801(bb). Shelter care is not a component of every CINA case. Rather, it involves a separate proceeding in which the juvenile court decides whether to authorize interim protection for a child who may be at risk in the home while the CINA petition is pending.

*Initial Placement of Child in Emergency Shelter Care*

Either before or after the filing of a CINA petition, a local department may place a child in emergency shelter care without a court order.[8] CJ §3-815(a); Maryland Rule 11-

---

[7] The juvenile court has certain other options in the case of a child with a developmental disability or mental illness. CJ §3-819(b)(ii).

[8] Also, a law enforcement officer may remove a child from the home "if the officer has reasonable grounds to believe that the child is in immediate danger from the child's surroundings and that the child's removal is necessary for the child's protection." CJ §3-814(a)(3). If a child is taken into custody by law enforcement pursuant to CJ §3-814(a)(3), the local department must either place the child in emergency shelter care or release the child to the child's parents. CJ §3-814(b)(3).

7

112(a)(1). The statute establishes the following criteria for placement in emergency shelter care:

> (b) A local department may place a child in emergency shelter care before a hearing if:
>
> > (1) Placement is required to protect the child from serious immediate danger;
> >
> > (2) There is no parent, guardian, custodian, relative, or other person able to provide supervision; and
> >
> > (3) (i) 1. The child's continued placement in the child's home is contrary to the welfare of the child; and
> >
> > > 2. Because of an alleged emergency situation, removal from the home is reasonable under the circumstances to provide for the safety of the child; or
> > >
> > > (ii) 1. Reasonable efforts have been made but have been unsuccessful in preventing or eliminating the need for removal from the child's home; and
> > >
> > > 2. As appropriate, reasonable efforts are being made to return the child to the child's home.

CJ §3-815(b).

---

The Family Law Article contains related provisions concerning temporary removal of a child from the home. A representative of a local department conducting an investigation into a report of child abuse or neglect may enter a household if he or she "(1) previously has been denied the right of entry; and (2) has probable cause to believe that a child is in serious, immediate danger." FL §5-709(a). "The representative may remove the child temporarily, without prior approval by the juvenile court, if the representative believes that the child is in serious, immediate danger." FL §5-709(c). At one time, there was consideration of placing all of these related provisions in the Family Law Article. *See* William H. Adkins, II, *Code Revision in Maryland: the Courts and Judicial Proceedings Article*, 34 Md. L. Rev. 7, 28 n. 109 (1974).

If a child is placed in emergency shelter care, on the next day the juvenile court is sitting, the local department must immediately file a petition with the juvenile court to authorize continued shelter care. CJ §3-815(c)(1); Maryland Rule 11-112(a)(2)(ii).[9]

In certain circumstances, the local department may file a petition for continued shelter care before even filing a CINA petition. For example, the local department may need more time to investigate the allegations to put in the CINA petition, or to decide whether filing a CINA petition is even in the child's best interests. Other times, as happened in the case at hand, the local department may file a petition for continued shelter care at the same time that it files the CINA petition. Either way, the purpose of continuing shelter care is to temporarily protect a child who has been removed from the home under emergent circumstances until it has been determined whether that child is a CINA.

*Juvenile Court Decision on Continuation of Temporary Shelter Care*

The juvenile court must then hold a shelter care hearing, no later than the next day on which court is in session, unless good cause is shown,[10] to determine whether temporary placement of the child outside the home for up to 30 days is warranted. CJ §3-815(c)(2). The matter may be initially heard by a juvenile court magistrate.[11] Reasonable notice of

---

[9] The rule refers to an "intake officer" as filing the petition. The reference to an intake officer – a person assigned to the court by a juvenile services agency to provide intake services (*see* CJ §3-8A-01(r)) – appears to be a remnant related to an earlier version of the CINA statute. *See* footnote 4 above.

[10] A shelter care hearing may not be postponed for more than eight days from the start of a child's placement in emergency shelter care. Maryland Rule 11-112(a)(3).

[11] Under Maryland Rule 11-111(a), a magistrate may order emergency shelter care, or continued shelter care, in accordance with Maryland Rule 11-112. However, a

the hearing is to be given to the child's parents, custodian, or relatives.  CJ §3-815(c)(3).

The hearing may be adversarial in nature.  However, the rules of evidence do not apply at

a shelter care hearing.  Maryland Rules 5-101(b)(11), 11-112(d).

The court may authorize continued shelter care outside the home if it reaches similar

conclusions to those of the department.  In particular, the statute provides:

> (d)     A court may continue shelter care beyond emergency shelter care
> only if the court finds that:
>
> > (1) Return of the child to the child's home is contrary to the safety and
> > welfare of the child; and
> >
> > (2) (i) Removal of the child from the child's home is necessary due to
> > an alleged emergency situation and in order to provide for the
> > safety of the child; or
> >
> > (ii) Reasonable efforts were made but were unsuccessful in
> > preventing or eliminating the need for removal of the child from
> > the home.

CJ §3-815(d).  Neither the statute nor the rule specifies a standard of proof for making

those findings.

Even if the juvenile court concludes that the criteria in CJ 3-§815(d) are satisfied

and orders shelter care to continue, that extension is limited.  The court may not order

shelter care to continue for more than 30 days.  CJ §3-815(c)(4).  Moreover, if the court

orders shelter care to continue, it must hold the adjudicatory hearing on the CINA petition

---

magistrate's order is subject to immediate review by a judge upon the filing of exceptions by any party.  Maryland Rule 11-111(c).  An excepting party other than the State may request a hearing de novo or a hearing on the record, while the State may only obtain a hearing on the record.  *Id.*

10

before the expiration of that 30-day period. Maryland Rule 11-114(b)(2). If the court does

not hold the adjudicatory hearing within that 30-day period, the child is to be released from

shelter care. *Id*. If the adjudicatory hearing is held within that period and the court finds

at that hearing that continued shelter care is needed to ensure the safety of the child, it may

extend shelter care for up to an additional 30 days. CJ §3-815(c)(4). As noted above, that

hearing is conducted under the rules of evidence and a preponderance standard applies. CJ

§3-817.

## II

## Facts and Procedural History

The Department no longer seeks shelter care for O.P. in this case. We provide an

overview of the underlying facts of this appeal and its procedural history for context.[12]

### A. *Emergency Shelter Care and Petition for Continued Shelter Care*

*O.P.'s Birth and Placement in Emergency Shelter Care*

O.P. was born seven weeks prematurely on October 7, 2018 to Respondent and

Cross-Petitioner N.R. ("the mother") and Respondent S.P. ("the father"). On November

23, after a seven-week stay in the neonatal intensive care unit at Johns Hopkins Hospital,

O.P. was discharged and went home with his parents. On December 14, the Department

received a report indicating that O.P. had been admitted to Johns Hopkins Hospital for

---

[12] A more comprehensive account of the evidence and the proceedings in the juvenile court is set forth in the opinion of the Court of Special Appeals. *In re O.P.*, 420 Md. App. 518, 532-45 (2019). Given that the merits of the shelter care determination is no longer at issue, there is no need to reiterate that entire account here.

11

serious unexplained brain injuries. O.P. remained at the hospital until December 21, when he was discharged and placed in emergency shelter care under the Department's custody.

*CINA Petition with Request for Continued Shelter Care*

On December 26, the first day that the courts were open after the holiday break, the Department filed with the Circuit Court for Anne Arundel County, sitting as a juvenile court, a CINA petition with a request for continued shelter care. The petition alleged that, according to the parents, an incident occurred at their home on December 12 in which O.P. was choking and seemed to have stopped breathing. Emergency personnel who responded to the incident "determined [O.P.] to be fine." However, at a doctor's visit two days later, the doctor was concerned about O.P.'s increased head circumference and immediately sent O.P. to the emergency room. There, medical providers discovered that O.P. had "both subdural and subarachnoid hemorrhaging," and he was admitted for further evaluation and treatment. According to medical providers at Johns Hopkins Hospital, the injuries were "consistent with abusive head trauma." They recommended that O.P. not be returned to his parents' care, given the lack of plausible explanation for the injuries and the parents' mental health histories. In particular, the mother had been diagnosed with bi-polar disorder and depression, while the father had experienced suicidal ideation and depression in the past. The Department and the parents were unable to agree upon a plan to ensure O.P.'s safety without removing him from the home, and no other family members were available to care for O.P. Based on these allegations, the Department asserted that the requirements for authorizing continued shelter care set forth in CJ §3-815(d) were satisfied.

12

***Shelter Care Hearings in the Juvenile Court***

*Petition for Continued Shelter Care*

On December 26, the same day that the Department filed the CINA petition with a request for continued shelter care, a juvenile magistrate held a hearing and issued an order continuing shelter care of O.P. pending the adjudication of the CINA petition. The juvenile magistrate did not issue written findings, recommendations, or conclusions; instead, the order was entered on the docket as part of the Hearing Sheet.

*Juvenile Court Denies Continued Shelter Care Applying Preponderance Standard*

The mother requested immediate review of the juvenile magistrate's order and the juvenile court held a de novo shelter care hearing the next day, December 27. At the hearing, the Department presented the testimony of a child protective services worker, as well as the hospital's discharge summary for O.P.[13] Counsel for the mother declined to present evidence and asked the court to deny the Department's petition for continued shelter care on the basis that, even if the evidence were viewed in the light most favorable to the Department, it had not carried its burden to show that O.P. was in need of shelter care.

At the conclusion of the Department's case, the juvenile court denied the Department's request for continued shelter care, stating on the record that it could not "find it more likely than not that abuse or neglect on the part of the parents is indicated here."

---

[13] A detailed summary of the child protective services worker's testimony, as well as the contents of the hospital discharge summary, is set forth in the opinion of the Court of Special Appeals. 240 Md. App. at 534-37.

After the juvenile court denied the petition for continued shelter care, the Department requested an order controlling the conduct of the parties, which the court also denied as "beyond the purpose" of the hearing.[14]  The court's December 27 order denying continued shelter care was entered on the docket as part of the Hearing Sheet.  When the Department refused to return O.P. to the custody of his parents immediately following the court's ruling, the juvenile court issued an additional order that same day mandating the immediate return of O.P. to his parents by that evening.

*Stay of Denial Pending Juvenile Court's Explanation*

The Department immediately appealed the juvenile court's denial of continued shelter care for O.P. and sought an injunction from the Court of Special Appeals.  On December 28, the intermediate appellate court temporarily stayed the termination of shelter care and remanded the matter to the juvenile court for an explanation of the basis of its December 27 order.  Pending that explanation, the Court of Special Appeals directed that the parties return to the pre-December 27 status quo, and O.P. was returned to emergency shelter care under the Department's custody.

On December 31, 2018, the juvenile court issued a memorandum opinion and order explaining its decision to deny the Department's request for continued shelter care.

---

[14] In a CINA proceeding, the "court, on its own motion or on application of a party, may issue an appropriate order directing, restraining, or otherwise controlling the conduct of a person properly before the court, if the court finds that the conduct: (1) Is or may be detrimental or harmful to a child over whom the court has jurisdiction; (2) Will tend to defeat the execution of an order or disposition made or to be made under this subtitle; or (3) Will assist in the rehabilitation of or is necessary for the welfare of the child."  CJ §3-821; *see also* Maryland Rule 11-110(e).

*Amended CINA Petition and Shelter Care Request*

On January 3, 2019, the Department filed an amended CINA petition with an amended request for shelter care stating that it had acquired additional evidence.[15] The amended petition contained several new allegations, including that the choking incident had actually occurred on December 10, not December 12; that the parents had refused the paramedics' recommendation that O.P. be taken to the emergency room; that the pediatrician at the December 14 visit noted certain new symptoms not present during O.P.'s prior visits, including "sunsetting of his eyes" and "increased head circumference"; that, based on O.P.'s birth records, his head was examined at least three times during his stay at the NICU and determined to be normal, and there was no indication that he suffered any brain-related incidents while at the NICU; and that O.P.'s pediatrician described his head as normal during visits on November 27 and December 5.

*The Juvenile Court Again Denies Temporary Shelter Care Based on Preponderance Standard*

On January 7, a juvenile magistrate held a hearing on the Department's amended shelter care request and granted continued shelter care. As before, the parents requested immediate review by the juvenile court. The juvenile court held a second de novo shelter care hearing on January 8-9, limited to the Department's new allegations. The Department

---

[15] One day prior, on January 2, the mother had filed a motion in the Court of Special Appeals to lift the stay and injunction and return O.P. to his parents. On January 4, the Court of Special Appeals denied the mother's motion pending conclusion of the juvenile court's hearing on the Department's amended shelter care request, but ordered that the stay would expire as soon as the juvenile court entered an order resolving the new request.

again presented the child protective services worker as its only witness and introduced additional documentary evidence, including EMS records from the paramedics who responded to the December incident and medical records from O.P.'s stay in the NICU and three pediatric visits. At the close of the Department's case, the juvenile court denied the parents' motion to dismiss the petition. The parents testified on January 9.[16]

On January 10, the juvenile court issued a second memorandum opinion and order denying the Department's amended request for continued shelter care.[17] Based on its findings, the court concluded that the Department had failed to prove by a preponderance of the evidence that O.P.'s injuries were (1) non-accidental; or (2) caused by abuse or neglect of the parents while he was in their custody or control. The court also concluded that the Department failed to prove that the parents were guilty of neglect. As the Court of Special Appeals' stay automatically expired as soon as the juvenile court issued its opinion and order, the juvenile court ordered the immediate return of O.P. to the custody of his parents.

Following the juvenile court's decision, the Department and O.P. noted immediate appeals to the Court of Special Appeals and sought a stay of the juvenile court's order

---

[16] A comprehensive summary of the evidence presented at the second de novo shelter care hearing, including the child protective services worker's testimony, the contents of the EMS records and the NICU and pediatric medical records, and the testimony of the parents, appears in the opinion of the Court of Special Appeals. 240 Md. App. at 539-41.

[17] A more complete description of the findings of fact contained in the juvenile court's memorandum opinion and order is set forth in the opinion of the Court of Special Appeals. 240 Md. App. at 543-45.

pending appeal. The intermediate appellate court denied that request and O.P. was returned to his parents.

## B.    The Appeal

The Court of Special Appeals expedited appeals by the Department and O.P. On March 29, 2019, it affirmed the juvenile court's judgment. 240 Md. App. 518 (2019).

The intermediate appellate court first addressed two threshold questions. It held that (1) the juvenile court's December 27 order denying the Department's petition for continued shelter care was moot because it was superseded by the court's January 10 order, which reached the same result; and (2) the January 10 order denying the Department's petition for continued shelter care was appealable under the collateral order doctrine. 240 Md. App. at 551-57.

As to the core issue in the case, the court held that a juvenile court must find the factors required by CJ §3-815(d) to continue shelter care by a preponderance of the evidence. *Id.* at 557-73. The court stated that, while it disagreed with some of the juvenile court's comments and while a reasonable fact finder could have also reached the opposite conclusion of the juvenile court under the applicable standard of proof, the juvenile court's fact findings were not clearly erroneous and the juvenile court did not abuse its discretion in the decision it reached based on those findings. *Id.*

The Department and O.P.'s counsel both petitioned this Court for a writ of *certiorari*. Those petitions raised two issues: (1) the appropriate standard of proof to be applied by a juvenile court to decide a petition to extend emergency shelter care; and (2) whether the juvenile court had abused its discretion in this case. In response, the mother

filed a conditional cross petition also raising two issues: (1) whether the juvenile court's order denying continued shelter care was appealable; and, if so, (2) whether the appropriate standard of proof is clear and convincing evidence.

We granted both the Department's and O.P.'s petitions, as well as the mother's conditional cross petition.

## C.  *Proceedings in the Juvenile Court After the Court of Special Appeals Decision*

In the meantime, on April 8, 2019, after the Court of Special Appeals had issued its decision, the Department filed a third amended CINA petition in the juvenile court. The Department reiterated the circumstances surrounding O.P.'s unexplained brain injury and cited concerns about his parents' inability to keep up with pediatric appointments for O.P. and his brother,[18] the conditions of the family home, and the parents' general ability to care for O.P. and his brother in light of the parents' respective histories of mental illness. The Department requested that the court issue an order of shelter care and place O.P. in the Department's custody.

The juvenile court scheduled a hearing combining the adjudication and disposition stages for April 16. In connection with the hearing, the Department filed a report documenting its regular visits to the family's home since O.P.'s placement with his parents on January 10. The Department reported that O.P. was doing well with his family and no longer called for removing O.P. from the home. Instead, the Department recommended

---

[18] The Department also filed a CINA petition on behalf of O.P.'s brother, containing many of the same allegations, but that petition is not at issue in this appeal.

that the parents receive continued support services from the Department pursuant to an order of protective supervision, attend a parenting education program, submit to psychological evaluations, attend all medical appointments and follow all medical and developmental recommendations, and ensure that the home is a safe environment.

At the adjudication phase of the hearing on April 16, the parents did not admit to the Department's allegations in the third amended CINA petition, but conceded that the Department could produce sufficient evidence for the court to find the allegations to be true. The juvenile court agreed. At the disposition phase of the hearing, the parties reached an agreement that O.P. was a CINA based on neglect, but that he should remain with his parents. On April 29, the juvenile court issued an order finding that O.P. was a CINA on the basis of neglect, and that the Department had made reasonable efforts to prevent O.P.'s placement in care by providing comprehensive services to the family. The order directed that O.P. remain in the care and custody of his parents, but granted an Order of Protective Supervision and required that the parents comply with the Department's recommendations. In addition, the court ordered that a Court Appointed Special Advocate be appointed.

As a result of these developments, O.P has remained in the care of his parents, and the Department no longer requests that O.P. be placed in shelter care.

### III

### Discussion

We granted the Department's and O.P.'s petitions for *certiorari* and the mother's conditional cross petition for *certiorari* to consider the following questions: (1) whether there is appellate jurisdiction of an appeal from an order denying a request for shelter care;

(2) what standard of proof a juvenile court is to apply in determining whether to authorize continued shelter care under CJ §3-815(d); and (3) whether the juvenile court made clearly erroneous findings of fact or abused its discretion in denying the Department's petition for continued shelter care.

As a preliminary issue, the mother has moved to dismiss this appeal as improvidently granted on grounds of mootness. She argues that the Department's agreement that O.P. remain with his parents, as well as the juvenile court's order to that effect, have rendered this appeal moot. Accordingly, we first address whether we should dismiss this appeal without reaching the merits.

## A. *Whether this Appeal Should be Dismissed as Moot*

As indicated above, in April 2019, around the time that the Department and the mother filed their petitions with this Court, the parties reached a resolution of sorts: the Department abandoned its request for an order of temporary shelter care, the parties agreed that O.P. was a CINA based on neglect but that O.P. should remain in the physical custody of his parents, and the juvenile court entered an order reflecting these developments. As a result, the issues on which we granted writs of *certiorari* are, as to this case and these parties (at least for the moment), moot. *See Mercy Hosp., Inc. v. Jackson*, 306 Md. 556, 561 (1986) (A case is moot if "there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide.").

Although an appellate court typically dismisses a moot appeal without addressing its merits,[19] there are several exceptions to the mootness doctrine. Under one exception, even if a controversy no longer exists when the case is before the appellate court, the case will not be dismissed as moot if the controversy is "capable of repetition, yet evading review." *State v. Parker*, 334 Md. 576, 584-85 (1994). An appellate court may justifiably decide an otherwise moot issue "if the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision." *Lloyd v. Board of Supervisors of Elections*, 206 Md. 36, 43 (1954); *see also Powell v. Department of Health,* 455 Md. 520, 539-41 (2017).

The standard of proof used by a juvenile court in deciding whether to grant or deny continued shelter care during the pendency of a CINA proceeding is an issue of public importance that will undoubtedly recur, perhaps even with the parties to this appeal. Application of that standard of proof to the determinations required by CJ §3-815(d) will determine whether a juvenile court authorizes the Department to continue to provide shelter care outside of the family home to a child alleged to be a victim of abuse or neglect. It is also important that juvenile courts in the State apply the same standard in making such

---

[19] There is, however, no constitutional bar to an appellate court expressing its views on a moot issue. *Mercy Hosp.*, 306 Md. at 562.

determinations. Given that shelter care proceedings, and related hearings in the CINA case, are inevitably on a fast track, an appeal from a denial of shelter care will almost always be moot by the time the appellate court would render its decision on a disputed question of law.

Accordingly, we decline to dismiss this appeal on that ground. We will therefore address the issues presented by the parties as to whether a juvenile court's order denying shelter care is appealable and, if so, what standard of proof is to be applied by a juvenile court in making that determination. However, as there is no longer a controversy among the parties concerning the placement of O.P. in shelter care at this time, we need not decide whether the juvenile court made clearly erroneous findings of fact or abused its discretion in denying the Department's petition for continued shelter care.

## B. *Whether There is Appellate Jurisdiction*

In her cross-petition for a writ of *certiorari*, the mother[20] raised another threshold question: whether the juvenile court's January 10 order denying the Department's petition for continued shelter care is appealable.

As a general rule, a party may appeal only from "a final judgment entered in a civil or criminal case by a circuit court." CJ §12-301. There are, however, three exceptions to the requirement of a final judgment: (1) appeals from interlocutory orders specifically allowed by statute; (2) immediate appeals permitted when a circuit court enters final

---

[20] The father did not join this argument.

judgment under Maryland Rule 2-602(b);[21] and (3) appeals from interlocutory rulings allowed under the common law collateral order doctrine. *Salvagno v. Frew*, 388 Md. 605, 615 (2005).

There is no dispute that the juvenile court's January 10 order denying continued shelter care is an interlocutory order in the context of the CINA case. The order is therefore not appealable unless an exception to the final judgment requirement applies. The Department has advanced two arguments for immediate appealability, one based on a statute that authorizes an interlocutory appeal of an order denying injunctive relief and the other based on the collateral order doctrine. The Court of Special Appeals concluded that an order denying continued shelter care is appealable under the collateral order doctrine. 240 Md. App. at 552-57. We agree with the intermediate appellate court's well-reasoned analysis and do not address the Department's alternative statutory theory.

An interlocutory order may be appealed under the collateral order doctrine if the order (1) conclusively determines (2) an important issue (3) separate from the merits of the action (4) that would be effectively unreviewable if the appeal had to await entry of a final judgment. *Pittsburgh Corning Corp. v. James*, 353 Md. 657, 661 (1999). As the Court of Special Appeals observed, the first, second, and fourth elements of the collateral order doctrine are easily satisfied in this case.

---

[21] Under Maryland Rule 2-602(b), a circuit court may expressly find that "there is no just reason for delay" and may direct entry of a final judgment as to fewer than all of the claims or parties.

First, the disputed question at a shelter care hearing – whether continued temporary placement of the child outside the home is warranted pending adjudication of the CINA petition – is conclusively determined by a juvenile court order denying continued shelter care.

Second, such an order undeniably resolves an important issue as the decision hinges on whether there is an emergency situation that requires temporary placement outside the home for the safety and welfare of the child.

Fourth, shelter care is by definition temporary during the pendency of a CINA proceeding and intended to deal with a serious risk to the child's safety and welfare during that period. A decision denying continued shelter care would be effectively unreviewable if an appeal had to await a final judgment in the CINA case.

As the Court of Special Appeals also recognized, the third element of the collateral order doctrine – whether the order resolves an issue that is separate from the merits of the action – presents the closest question. The Court of Special Appeals carefully analyzed this element in relation to a denial of temporary shelter care. We can do no better than adopt its analysis:

> A request for continuation of shelter care frequently accompanies a CINA petition, but it is neither a necessary step in a CINA proceeding nor does it constitute part of the CINA determination. Although the facts relevant to a determination of whether to authorize continued shelter care and whether a child is a CINA may substantially overlap, the issues in the two proceedings are fundamentally distinct. The core issue in a shelter care proceeding is whether there is an impending risk to the health and safety of a child – from whatever source and for whatever reason – if the child is returned home before the court can complete the disposition phase of a CINA proceeding. The resolution of that issue will determine where and with whom the

24

child will reside prior to the adjudication of the merits of the CINA petition. The core issues in a CINA proceeding, by contrast, are (1) whether the child has been abused or neglected and whether his or her parents or guardians are unwilling or unable to care for him or her, and (2) if so, what plan the court will approve for permanency for the child subsequent to the adjudication and disposition of the CINA petition.

The unique nature of shelter care proceedings informs our conclusion that an order denying continued shelter is completely separate from the merits of a CINA proceeding for purposes of the collateral order doctrine. Because a hearing must be held on a petition for continued shelter [care] so soon after a local department places a child in emergency shelter care, the Rules of Evidence do not apply at the hearing. As a result, as in this case, much of the evidence that is submitted can be based on hearsay that would be inadmissible in any subsequent proceeding. The purpose of a shelter care hearing is thus not to gather evidence for either side to prove its ultimate case, nor is such a hearing a necessary step on the path to an adjudicatory hearing or disposition. Instead, it is parallel to and separate from the proceedings that ultimately lead to the CINA decision. That distinguishes the orders resulting from such proceedings from others that our appellate courts have found not to constitute appealable collateral orders.

\*　　　　\*　　　　\*

Here, the shelter care determination is not a "step toward the final disposition" of a CINA proceeding. Shelter care runs its course not in the path of the CINA adjudication, but collaterally, in its own lane, without advancing or hindering the final CINA decision. That, combined with its conclusive resolution of an important issue that is effectively unreviewable on direct appeal, renders it among the narrow class of orders reviewable under the collateral order doctrine.

240 Md. App. at 554-57 (citations omitted).[22]

---

[22] The Court of Special Appeals distinguished an order denying continued shelter care from other types of orders that this Court has found are not appealable under the collateral order doctrine. *See Harris v. State*, 420 Md. 300, 320 (2011) (order granting discovery request for competency hearing is not appealable under collateral order doctrine because a competency hearing, although a distinct phase of a criminal trial, is not entirely separate from the trial but rather is a step toward final disposition of a prosecution); *In re Samone H.*, 385 Md. 282, 316 n.13 (2005) (order denying a mother's motion for an

In sum, we hold that the juvenile court's order denying the Department's request for continued shelter care is reviewable under the collateral order doctrine.

## C.  *The Standard of Proof for Authorizing Continued Shelter Care*

The central issue in this case is the standard of proof that a juvenile court is to apply in determining whether to authorize continued temporary shelter care. The juvenile court applied a preponderance of the evidence standard, although it did not analyze the issue.[23] The Court of Special Appeals considered the question in some detail and, relying on this Court's decision in *Volodarsky v. Tarachanskaya*, 397 Md. 291 (2007), concluded that it was appropriate to apply a preponderance standard of proof. The intermediate appellate court indicated that, while the record of this case could have supported a conclusion that the Department met that burden, it would defer to the juvenile court's assessment.

The Department and O.P. both take the position that the juvenile court erred in applying a preponderance standard when it assessed whether the criteria in CJ §3-815(d) for continued shelter care were satisfied in this case. The Department argues that the criteria in CJ §3-815(d) are not first-level fact findings to which a fact finder would apply a traditional burden of proof (which may be difficult to do based on the limited information

independent evaluation in CINA proceeding is not appealable under collateral order doctrine because such evaluations are "not completely separate from the merits of the action").

[23] The juvenile court quoted a passage from *In re Priscilla B.*, 214 Md. App. 600, 622 (2013), that describes the standard of proof specified by statute for an adjudicatory hearing in a CINA case. That opinion did not discuss the standard of proof applicable at a shelter care hearing.

available at the outset of a CINA case) but rather the bases for determining the "best interests" of the child – a standard that all presumably agree should determine whether a child is placed in emergency shelter care while the CINA case is pending. Counsel for O.P. argues in her brief for a hybrid standard of proof – *i.e.,* that emergency shelter care may be continued if the Department proves by a preponderance the *possibility* of abuse or neglect of the child. At oral argument, counsel rephrased that standard as one in which a court would look to whether there are "reasonable grounds" to find that the statutory criteria in CJ §3-815(d) for continued shelter care are satisfied.

O.P.'s parents urge us to affirm the decision of the Court of Special Appeals, although the mother argues in the alternative that a higher standard of proof, such as clear and convincing evidence, should apply.

We appreciate the distinction that the Department makes between whether evidence supports findings of first-level facts and whether those first-level facts satisfy a legal requirement, such as the criteria for continued shelter care. Yet the question remains: what level of confidence should a juvenile court have, based on the limited information available at the outset of a CINA case, to authorize the temporary removal of a child from the home due to an alleged emergency that puts the child's safety and welfare at risk? In our view, it is not inappropriate to express that level of confidence in the familiar language of a standard of proof.

1. Statutory Construction

This issue presents a question of law that we consider without deference to the decisions of the juvenile court or of the Court of Special Appeals. To answer it, we must

construe the shelter care provision of the CINA statute. As in any question of statutory interpretation, the goal is to discern and implement the intent of the Legislature. That quest starts with the text of the particular provision within the context of the statutory scheme of which it is part. Review of the legislative history of the provision may help confirm conclusions drawn from the text or resolve its ambiguities. Prior case law concerning the provision or similar statutes, both in Maryland and other jurisdictions, may provide helpful guidance. Finally, consideration of the consequences of alternative interpretations of the statute grounds the analysis. *See Blue v. Prince George's County*, 434 Md. 681, 689 (2013) (citing *Town of Oxford v. Koste*, 204 Md. App. 578, 585-86 (2012), *aff'd*, 431 Md. 14 (2013)); *State v. Thomas*, 465 Md. 288, 301 (2019).

2.      The Text of the Shelter Care Provision in Context

As previously indicated, CJ §3-815(d) provides that a juvenile court may authorize continued shelter care for a child up to an additional 30 days after the child is removed from the home "only if [it] finds" certain criteria: (1) that return of the child to his or her home is "contrary to the safety and welfare of the child"; and (2) either that (i) removal from the home is "necessary due to an alleged emergency situation and in order to provide for the safety of the child," or that (ii) reasonable efforts were made but were unsuccessful to eliminate the need to remove the child from the home. The text of CJ §3-815(d) does not specify a particular standard of proof.[24] The pertinent Maryland Rule does not fill in

---

[24] In its analysis of the text of CJ §3-815(d), the Court of Special Appeals reasoned that the use of the verb "find" in that subsection implicitly established a preponderance standard of proof. 240 Md. App. at 563-65. However, the verb "find" frequently appears in statute or rule in reference to findings made by standards of proof other than a

that gap. *See* Maryland Rule 11-112. Nor do the forms appended to Maryland Rules. *See* Appendix to Maryland Rules, Form 912-P/CDSC, ("Petition for Continued Shelter Care or Detention"); Form 912-O/CDSC ("Order to Continued Shelter Care or Detention").

Statutory silence may seem at first frustrating, but in context it may be telling. Related provisions of the statute do state standards of proof or levels of confidence. The standard of proof to be applied at a hearing on the temporary continuation of emergency shelter care must make sense in that context.

The statutory provisions that authorize a local department or law enforcement officer to remove a child from the home and place the child in emergency shelter care in an emergency situation when the child is believed to be in serious, immediate danger use phrases such as "probable cause,"[25] "reasonable grounds,"[26] and "reasonable under the circumstances."[27] The CINA statute also specifies a standard of proof when the juvenile court holds a more formal hearing on the allegations of the CINA petition, and makes

---

preponderance. *See, e.g.,* Maryland Code, Criminal Procedure Article, §11-110(c) (court may order individual to give blood sample if it "finds" probable cause that a particular event occurred); Maryland Code, Public Safety Article, §5-604(a)(4) (authorizing referral of individual for emergency mental health evaluation if court "finds" probable cause that criteria are satisfied); Maryland Code, Family Law Article, §4-505(a)(1) (court may enter temporary protective order, including award of temporary custody of child, if it "finds" reasonable grounds to believe that criteria are met). In our view, the use of the verb "find" alone does not necessarily indicate a particular standard of proof. As explained later in this opinion, other language of a particular statute and the context in which the court "finds" something determine the standard of proof.

[25] FL §5-709(a).

[26] CJ §3-814(a)(3).

[27] CJ §3-815(b)(3)(i)2.

findings related to any request for continued shelter care beyond 30 days, at the adjudicatory hearing. That standard is preponderance of the evidence.[28]

The hearing on the request to continue emergency shelter care is a relatively informal hearing that is to take place almost immediately after the child is first removed from the home on the basis of an alleged emergency that poses a serious danger to the child's safety. It relates to the interim period, limited to 30 days, between the emergency placement of the child in shelter care and the adjudicatory hearing. It is an opportunity for the parents, or other guardian, to contest the basis for the temporary placement of the child in shelter care before a neutral arbiter – the juvenile court – but it is clearly not intended to be a premature trial of the allegations in the CINA petition. It makes little sense to permit initial placement of a child in shelter care when it is reasonable under the circumstances due to an alleged emergency, and then require proof by a preponderance of the evidence the next day or shortly thereafter. It seems fair to conclude that it should not be governed by the same standard of proof as at the later adjudicatory hearing.

3.      Legislative History

*The Maryland CINA Statute and its Relation to Federal Law*

The legislative history of the statutes governing shelter care proceedings is informative, although the legislation creating what is now referred to as a shelter care hearing and limiting a shelter care order to 30 days was enacted before the General Assembly consistently preserved bill files.

---

[28] CJ §3-817(c).

In 1969, the General Assembly enacted a comprehensive revision of the statutes relating to juvenile causes, which were then part of former Article 26 of the Maryland Code. Chapter 432, Laws of Maryland 1969. That law concerned cases involving children alleged to be delinquent, neglected, or in need of supervision. When a child placed in detention or shelter care was not immediately released, that law required that a petition be filed, to be followed by a prompt hearing on whether the detention or shelter care should continue. Maryland Code, Article 26, §70-13 (1966 Repl. Vol., 1970 Supp.). With respect to adjudicatory hearings, the law specified that, while a delinquency petition required proof beyond a reasonable doubt, other petitions need be proven only by a preponderance. Article 26, §70-18. The criteria for placing a child in shelter care were similar to, although not precisely the same as, those that appear in CJ §3-815 today.[29]

---

[29] The statute provided:

A child taken into custody shall not be placed in detention or shelter care prior to a hearing on the petition unless:

(1) The care is required to protect the person or property of others or of the child;

(2) The child is likely to leave the jurisdiction of the court;

(3) He has no parents, guardian, or custodian or other person able to provide supervision and care for him and return him to the court when required; or

(4) an order for detention or shelter care has been made by the court pursuant to the provisions of this subtitle.

Article 26, §70-11 (1966 Repl. Vol., 1970 Supp.).

Court rules adopted to coordinate with the 1969 legislation limited the duration of shelter care pending an adjudicatory hearing to 30 days. Maryland Rule 909 (1971 Repl. Vol.). With respect to the adjudicatory hearing, another rule provided that the rules of evidence would apply at that hearing and limited the duration of shelter care after the hearing to an additional 30 days. Maryland Rule 912(c), (d)(2) (1971 Repl. Vol.).

In 1973, the juvenile causes act was re-codified as Title 3, subtitle 8 of the new Courts & Judicial Proceedings Article. Chapter 2, Extraordinary Special Session, Laws of Maryland 1973. In 1975, that law was revised once again to incorporate another juvenile causes statute that had applied only in Montgomery County. Chapter 554, Laws of Maryland 1975.[30]

The criteria for placing and continuing a child in shelter care that appear in the statute today were the product of amendments made to the statute in 1992. Chapter 173, Laws of Maryland 1992. In that legislation, the General Assembly set forth the criteria (that now appear in CJ §3-815(b)) for a local department to place a child alleged to be a CINA in emergency shelter care. That legislation also included a requirement that, when authorizing continued temporary shelter care after a hearing, the juvenile court make the

---

[30] A comprehensive 62-page memorandum by Alan M. Wilner, then the Governor's chief legislative officer and later a judge of this Court, appears in the bill file for the cross-filed Senate Bill related to that legislation and provides a detailed explanation of the various provisions of the juvenile causes act. Unfortunately for our purposes, like the statute at that time, it focuses primarily on issues related to delinquency cases and does not discuss a standard of proof for a decision on temporary emergency shelter care.

findings that now appear in CJ §3-815(d).[31]  These amendments were intended to ensure that such determinations complied with the requirements of federal law – Title IV-E of the Social Security Act – so that the State remained eligible for federal funds related to foster care.  *See* Floor Report of Senate Judicial Proceedings Committee for House Bill 629 (1992); Fiscal Note for House Bill 629 (February 10, 1992).

In 2001, the Legislature separated CINA proceedings, including those related to shelter care, from other juvenile causes – *e.g*., detention proceedings in delinquency cases. Chapter 415, Laws of Maryland 2001; *see* CJ §3-801 *et seq.* (statutory provisions related to CINA cases); CJ §3-8A-01 *et seq.* (statutory provisions related to juvenile causes other than CINA cases).

*Federal Law on Findings for Temporary Shelter Care*

As indicated above, the findings required by CJ §3-815(d) for a 30-day continuation of emergency shelter care following the child's initial placement derive in large measure from a federal law that sets conditions on payments to states to support foster care.  In particular, federal regulations require that, in the first state court ruling pertaining to a child's removal from the home, the court must determine either that remaining in the home would be contrary to the child's welfare or that shelter care placement is in the child's best interest.  45 CFR §1356.21(c).  There must also be a judicial determination, within 60 days of the child's removal, that the state has made "reasonable efforts" to maintain the child in

---

[31] In the 1992 legislation, what are now subsections (b) and (d) of CJ §3-815 appeared in subsections (c) and (f), respectively.  They were re-codified in their current location in 2001.  Chapter 415, Laws of Maryland 2001.

the home and prevent unnecessary removal, although the regulations also specify that, in making that determination, "the child's health and safety must be the paramount concern." 45 CFR §1356.21(b).

While federal law was the driving force for the inclusion of the required findings in CJ §3-815(d), it does not require that the findings be made by any particular process or standard of proof. *See* 65 Fed. Reg. 4022, 4029 (Jan. 25, 2000) (explaining that certain requirements for state hearing procedures were eliminated from proposed federal regulations). As a result, states have developed a variety of different procedures for deciding whether those criteria are met for emergency shelter care in CINA cases.

*Standards of Proof Applied in Other States*

Most states have adopted a "probable cause," "reasonable cause," or similar standard for the findings needed to maintain a child in temporary shelter care outside the home pending adjudication of a CINA petition.[32] A minority of states have adopted a

---

[32] *See, e.g.*, Alaska Statutes, §47.10.142 and Alaska Child in Need of Aid Rule 10 ("probable cause" standard applies at temporary custody hearing to be held within 48 hours of initial placement); Arizona Revised Statutes, §8-821 and Juvenile Court Rule 51 ("probable cause" standard to be applied at juvenile court review hearing to continue temporary custody); Delaware Family Court Rules of Civil Procedure Rule 226 ("probable cause" standard to be applied to determine temporary custody pending adjudicatory hearing); Florida Statutes, §39.402(8)(d) ("probable cause" standard to be applied by court to continue shelter care); Georgia Code, §15-11-414(b) ("probable cause" standard for continuation of temporary custody); Hawaii Revised Statutes, §587A-26(c)(2) ("reasonable cause" standard to be applied to continue temporary foster care); Louisiana Children's Code, Article 626(A) ("reasonable grounds" standard for continuation of child in custody pending adjudicatory hearing); Minnesota Statutes, §260C.178(c) (protective care of child to be continued if there is "reason to believe" that child's health or welfare would be immediately endangered if returned home); South Carolina Code, §63-7-710(C) ("probable cause" standard for emergency protective custody to be applied at probable cause hearing); New Hampshire Revised Statutes, §169-C:15 ("reasonable cause" standard

preponderance standard.[33]  A few states have adopted what appear to be hybrid standards that are less than a strict preponderance standard.[34]

Of course, in construing a Maryland statute we do not simply take a poll of other states.  However, the decisions made by lawmakers in other states as to what standard of proof to apply for the findings required to continue temporary shelter care is indicative of the nature of the decision being made by a Maryland court when it decides whether to continue temporary emergency shelter care by making those findings.  And the nature of that decision helps inform our interpretation of legislative silence.

4.      The *Volodarsky* Case

In arguing for a preponderance – or higher – standard of proof, the mother relies on *Volodarsky v. Tarachanskaya,* 397 Md. 291 (2007), as did the Court of Special Appeals.

_____

applied at preliminary hearing after child is removed from home); Revised Code of Washington, §13.34.065 ("reasonable cause" standard applied at shelter care hearing within 72 hours of removal of child from home).

Other states that have adopted similar standards include California, Idaho, Illinois, Indiana, Kansas, Mississippi, Missouri, Montana, Nevada, New Mexico, North Dakota, Oklahoma, Rhode Island, South Dakota, and Tennessee, as well as the District of Columbia.

[33] *See, e.g.*, Maine Revised Statutes, §4034(2); Utah Code, §§78A-6-306(9), 78A-6-311(1); 33 Vermont Statutes, §5307(a).

[34] *See, e.g.*, Arkansas Code, §9-27-315 (court may grant continuation of emergency custody order at "probable cause hearing" if it finds "by a preponderance of evidence that probable cause exists" to protect the child); Kentucky Revised Statutes, §620.080(2) (court is to issue order for temporary removal if it finds "by a preponderance of the evidence" that "there are reasonable grounds to believe" child would be abused or neglected if returned to or left at home).

35

*Volodarsky* did not concern a temporary continuation of shelter care, but rather the resolution of a custody dispute.

In that case, the parents, who had conceived a child during an extra-marital affair, were engaged in a long-running dispute over custody of that child. The controversy involved competing charges of neglect, physical abuse, and sexual abuse of the child that resulted in numerous proceedings recounted at some length in this Court's opinion. The pertinent statute – FL §9-101 – provides that, if a court has "reasonable grounds to believe" that a child has been abused or neglected, it is to determine whether the abuse or neglect is "likely to continue" if custody or visitation is awarded to the parent accused of that conduct. FL §9-101(a). The statute further provides that "[u]nless the court specifically finds that there is no likelihood" of further abuse or neglect, the court is to deny custody or visitation to that party. FL §9-101(b).

Over the six years of the dispute, the circuit court had issued various orders governing custody and visitation and dealt with protective orders sought by the parents against each other. The circuit court ultimately conducted a six-day trial and issued a 28-page opinion to resolve the charges of abuse and neglect. In that opinion, the circuit court stated that it was not persuaded by a preponderance of the evidence that the mother's allegations of sexual abuse against the father were true. 397 Md. at 302. On appeal, the Court of Special Appeals reversed, holding that the Circuit Court had applied too strict a standard of proof and that the use of the phrase "reasonable grounds" in FL §9-101 indicated a lesser standard of proof. *Id.* at 303.

36

This Court reversed the decision of the intermediate appellate court. The Court concluded that, despite the use of the phrase "reasonable grounds," this statute required proof of abuse or neglect by a preponderance of the evidence to deny custody and visitation to a parent. The Court looked beyond the isolated phrase "reasonable grounds" to the entire text of the statute.[35] It noted that a requirement in subsection (b) of the statute that a court find "no likelihood of *further* abuse or neglect" implied that a court's finding under subsection (a) of the statute that there were reasonable grounds to believe that abuse or neglect had occurred necessarily was a conclusion that something had "more likely occurred than not." *Id.* at 304-6.

In addition, the Court noted that the fact findings of the circuit court in the case before it were based on the circuit court's evaluation in a comprehensive opinion of conflicting testimonial evidence of the parties and their experts during the six-day trial. The Court contrasted that decision with the sort of "preliminary determination," often

---

[35] FL §9-101 provided:

> (a) In any custody or visitation proceeding, if the court has reasonable grounds to believe that a child has been abused or neglected by a party to the proceeding, the court shall determine whether abuse or neglect is likely to occur if custody or visitation rights are granted to the party.

> (b) Unless the court specifically finds that there is no likelihood of further child abuse or neglect by the party, the court shall deny custody or visitation rights to that party, except that the court may approve a supervised visitation arrangement that assures the safety and the physiological, psychological, and emotional well-being of the child.

The statute is unchanged since the *Volodarsky* decision.

based on hearsay in an *ex parte* proceeding, made by a magistrate considering whether there was probable cause to issue an arrest or search warrant. *Id.* at 306-7. The custody decision in *Volodarsky* was not a temporary or preliminary decision that was adjunct to some other proceeding that would settle the rights of the parties – it *was* the adjudication of the right to custody of the child.

In its discussion of the appropriate burden of proof, the Court in *Volodarsky* looked to the Supreme Court's discussion of standards of proof in *Addington v. Texas*, 441 U.S. 418 (1979). That case concerned the standard of proof to be applied by a jury in the trial of a complaint seeking the involuntary commitment of an individual to a mental health facility for an indefinite period. The issue in *Addington* did not involve a proceeding to make a preliminary or temporary decision pending adjudication of an issue – as in *Volodarsky*, the trial in *Addington was* the adjudication of the issue.[36] Unsurprisingly, the Supreme Court discussed only three standards of proof – beyond a reasonable doubt, clear and convincing, and preponderance – the standards generally applicable in trials of cases.[37] It noted that the selection of one of those standards related, among other things, to "the relative importance attached to the *ultimate decision*." 441 U.S. at 423 (emphasis added).

---

[36] The defendant in that case had previously been committed temporarily, at the behest of his mother, on seven occasions. 441 U.S. at 420. The standard of proof for a temporary commitment was not at issue in *Addington*.

[37] The Texas courts, at various levels, had applied all three standards for a trial of an indefinite involuntary commitment case, with the Texas Supreme Court ultimately opting for a preponderance standard. *See State v. Turner*, 556 S.W.2d 563 (1977). The United States Supreme Court held that due process required that the jury apply a higher standard of proof, such as clear and convincing.

A few months after the *Volodarsky* decision, this Court was called upon to construe another statute that also employed the phrase "reasonable grounds to believe." *Motor Vehicle Administration v. Shepard*, 399 Md. 241 (2007). In that case, the phrase appeared in Maryland Code, Transportation Article ("TR"), §16-105.1, which concerns the circumstances under which a police officer may ask a motorist suspected of drunk driving to take a blood alcohol test. Again, the Court did not focus on the phrase in isolation, but looked to the context in which it appeared. Observing that the phrase was used in relation to a "preliminary determination based on incomplete and often non-testimonial hearsay evidence," the Court concluded that the phrase – at least in the context of TR §16-105.1 – did not equate to a preponderance standard and, indeed, denoted a standard less than probable cause. 399 Md. at 258-59.[38]

In many circumstances, the phrase "reasonable grounds" has been understood to refer to a standard somewhere between the preponderance standard articulated in *Volodarsky* and the standard less than probable cause stated in *Shepard*. In fact, it has often been used essentially as a synonym for probable cause. *See Stevenson v. State*, 287 Md. 504, 516 (1980) (characterizing "reasonable grounds" and "probable cause" as "substantial equivalents" in the standard for a lawful arrest); Black's Law Dictionary, *Probable Cause*

---

[38] The concurring opinion joined by two judges also rejected the contention that a preponderance standard was applicable, but would simply have assessed whether the officer's action was reasonable under the circumstances and found it unnecessary to compare it to a probable cause standard. 399 Md. at 266-67 (Eldridge, J., concurring).

(9th ed. 2009) at 1321 (defining "probable cause" as a "reasonable ground" to believe that a person has committed a crime).

The determination made at a hearing to temporarily continue shelter care appears to lie somewhere on the continuum between the determination at issue in *Volodarsky* and the determination at issue in *Shepard*. The shelter care hearing takes place a day or two after the child is placed in shelter care due to an alleged emergency situation in which the child's safety and welfare is alleged to be at risk. It is a preliminary determination based on incomplete and often non-testimonial hearsay evidence. It is not the adjudication of the ultimate decision as in *Volodarsky*. On the other hand, it is not simply, as in *Shepard*, a review of a law enforcement officer's conclusion that "reasonable grounds" existed, but an independent judicial determination.

5.      The Preliminary and Temporary Shelter Care Decision

To place the shelter care hearing at its appropriate place along the continuum, it is useful to ask: What are the consequences of the juvenile court's decision at a shelter care hearing? How does that decision relate to what comes before and after in the CINA proceeding?

At the shelter care hearing, the juvenile court is not determining whether the allegations of abuse or neglect in the CINA petition are true; that happens later at the *adjudicatory hearing* in the CINA case. Rather, the inquiry focuses on whether a return to the home is contrary to the child's immediate safety and whether removal from the home is necessary to protect the child because of the alleged emergency. A shelter care hearing conducted under CJ §3-815(d) is, in the general scheme of the statute, an initial preliminary

40

judicial consideration of the issue.  It might be characterized as the second stage of a three-stage process.

In the initial stage, a shelter care proceeding begins when a local department determines that a child is in "serious immediate danger," also finds that the other criteria for emergency shelter care exist, and places the child in emergency shelter care.  CJ 3-815(a)-(b).  The court is not involved at this stage.

That initial stage is followed, more or less immediately, by a second stage.  The local department files a petition seeking to continue emergency shelter care for a period of up to 30 days and the juvenile court holds a prompt hearing to determine whether the criteria in CJ §3-815(d) – which are similar to the criteria the local department applied at the initial stage – are met.  This hearing is ordinarily to be held the day after a child is removed from the home.  At this point, the local department likely has not yet had the chance to conduct a complete investigation.  As the Court of Special Appeals aptly described the situation: "Information is often unavoidably scarce, facts are often developing and disconcertingly unclear, [and] the law requires immediate action."  240 Md. App. at 532.

Other than requiring a hearing and specifying that the rules of evidence do not apply, the statute and rule do not elaborate on the parameters of the hearing, including a standard of proof for any findings.  However, a decision made at that hearing to continue shelter care establishes a 30-day deadline for holding the adjudicatory hearing in the CINA case.  Maryland Rule 11-114(b).  Shelter care is only meant to provide interim protection for a

child pending further proceedings in the CINA case and is, by definition, temporary. CJ §3-801(bb).

The third stage of the temporary shelter care process is the adjudicatory hearing in the CINA case. If the local department seeks to extend shelter care beyond an initial 30 days, it can obtain an extension for an additional 30 days only if the necessary findings are made at the adjudication hearing in the CINA case. Based on its findings at that hearing, a juvenile court may commit the child to the custody of someone other than the parent, whether that be a relative, the local department, or some other person. CJ §§3-817(c), 3-819(b). This deprivation of parental rights is necessarily of a greater magnitude than the temporary deprivation of custody that results from the initial order of shelter care. At that hearing, the rules of evidence *do* apply, and the juvenile court is required by statute to make any findings using a preponderance standard. CJ §§3-815(c)(4), (d), 3-817.

The silence in CJ §3-815(d) as to a standard of proof at the second stage contrasts with the express statement in CJ §3-817(c) that a preponderance standard applies at the third, or adjudication, stage. Given the relationship of the two proceedings, the implication is that the preponderance standard does *not* apply at the earlier proceeding.

If the preponderance standard does not apply, what standard of proof should apply? It would be illogical to require that the criteria for continued shelter care be demonstrated by a clear and convincing standard of proof at the preliminary second stage of shelter care proceedings, when a preponderance standard applies at a later stage after the parties have had additional time to marshal support for their respective positions and where the hearing is conducted under the rules of evidence.

42

An analogy might be drawn to the arrest and pretrial detention of a defendant in a criminal case – which results in a serious deprivation of individual liberty, but one that is preliminary and temporary pending fuller adjudication. Arrest and detention in a criminal case can also be envisioned as part of a three-stage process with different, though related, determinations made at each stage. First, an individual may be arrested if there is *probable cause* that the individual committed a crime. *See, e.g.*, Maryland Code, Criminal Procedure, §2-202 (authority of police officer to arrest person if officer has "probable cause to believe" that crime is being or has been committed).[39]

There is then, almost immediately, a second stage at which the defendant appears before a judicial officer who determines whether the defendant is to remain detained. If the defendant was arrested without a warrant, the judicial officer first determines whether was there was "probable cause" to support the arrest. Maryland Rule 4-216. In determining whether the defendant should remain detained, the judicial officer is to assess whether there is a "reasonable likelihood" either that the defendant will not appear when required or "will be a danger to an alleged victim, another person, or the community." Maryland Rule 4-216.1(b)(1). That determination is immediately revisited under the same standard by a judge at an adversary hearing at which the defendant is represented by counsel, but which is not conducted under the rules of evidence. Maryland Rules 4-216.2,

---

[39] A private citizen has authority under the common law to make an arrest in more limited circumstances, but the standard remains "probable cause" or "reasonable grounds" to believe that a felony has been committed or that a felony or misdemeanor is being committed in the arrester's presence. *Stevenson v. State*, 287 Md. 504, 511-21 (1980).

5-101(b)(6). There may also follow a preliminary hearing, adversarial in nature although not conducted under the rules of evidence, at which the "probable cause" and "reasonable likelihood" standards apply. Maryland Code, Criminal Procedure Article ("CP"), §4-103; Maryland Rule 4-221. Like the juvenile court at the second stage of the shelter care process, the judge at a detention hearing or preliminary hearing must weigh the serious restraint on individual liberty against the risks to the safety and welfare of others preliminarily and without a full adjudication of the facts.

What might be thought of as the third stage of the criminal proceeding is the adjudication of whether the defendant in fact committed the crime alleged. That adjudication is conducted under a higher standard of proof – proof beyond a reasonable doubt – and the rules of evidence apply. A defendant who has been detained pretrial will only remain in custody if the fact finder determines that the elements of the criminal charge are proved by that standard of proof.[40] Thus, similar to the requirement that the duration of shelter care be limited pending an adjudication hearing at which a higher standard of proof applies, the temporary initial detention of a defendant in a criminal case is based on a lower standard of proof pending a more formal adjudication with a higher standard of proof.[41]

---

[40] Of course, in a particular case, a defendant may be released from custody and not sentenced to imprisonment, even if convicted. But if the charge is not proved beyond a reasonable doubt, the defendant will no longer be detained.

[41] The criminal process outlined in the text applies, of course, to cases involving charges of criminal child abuse or neglect. A parent charged with criminal child abuse or child neglect under Maryland Code, Criminal Law, §§3-601, 3-602.1 could be arrested under the "probable cause" standard concerning commission of the offense and detained

Thus, the criminal law contemplates a temporary but serious restraint on individual liberty based on a standard of proof not only less than what is required in the adjudicatory phase of that proceeding, but also less than a preponderance of evidence.

6.      Summary

As the Court of Special Appeals observed, "this case presents a clash of competing interests of the highest order—the State's *parens patriae* interest in protecting children from harm and the fundamental liberty interest of parents in raising their children." 240 Md. App. at 565. The standard of proof in such a proceeding is but one component in a decision that, along with sentencing in criminal cases, is the most difficult that those on the front lines of the judiciary must make. It is no accident that, in illustrating the decision making of a wise judge, the scriptures tell the story not of an appellate judge, but of a trial judge in a child custody case.[42]

An order to continue emergency shelter care as a result of a shelter care hearing is preliminary and temporary. The hearing happens at the very outset of the CINA case, when the parties may still be marshalling evidence. It is conducted informally and immediately to deal with a perceived emergency situation. Any shelter care order resulting from that

_____

under the "reasonable likelihood" standard concerning risk to the child, pending adjudication of those charges under the standard of proof "beyond a reasonable doubt."

In making this observation, we do not suggest that every CINA case involving allegations of parental abuse or neglect of a child is worthy of criminal prosecution. In particular, we are not expressing an opinion on whether such charges would pertain to O.P.'s parents.

[42] 1 Kings 3:16-28 (Solomon and the two mothers).

hearing lasts for no more than 30 days and may accelerate the timing of an adjudicatory hearing. In similar contexts, the law generally allows for decisions to be based on standards such as probable cause, reasonable grounds, or reasonable likelihood. Such a standard is applied for similar preliminary temporary orders in CINA cases in most states that have expressed a standard of proof in statute. It is the adjudicatory hearing, which happens within 30 days of the initial shelter care order, that is the full evidentiary hearing in a CINA case. By the time of that hearing, the local department presumably has time to investigate the facts more fully, and the parents have time to prepare a defense. The rules of evidence apply, and the juvenile court is expressly tasked with assessing whether the local department has met its burden of proving allegations by a preponderance of the evidence.

We decline to read a requirement of proof by a preponderance of the evidence into the text of the shelter care statute. Based on the strong interest in protecting the child's best interests at the shelter care stage of a CINA case, coupled with the fact that the deprivation of parental rights at the shelter care phase is temporary, pending further adjudication of the CINA petition, we conclude that reasonable grounds is the appropriate standard for a juvenile court to apply.[43] Accordingly, a juvenile court may continue temporary shelter care for a child alleged to face a serious immediate risk as a result of an

---

[43] At oral argument, the mother asserted that a reasonable grounds standard, or any similar standard less than a preponderance, for authorizing temporary continued shelter care would be unconstitutional as violative of the due process rights of parents. It is true that such an order implicates a constitutional right of the parents to raise their child, but for the reasons explained in the text of this opinion, that right is not unlimited and, in our view, a reasonable grounds standard best accommodates the parents' rights with the need to ensure the safety and welfare of a child.

emergency situation if the court has reasonable grounds to find the criteria in CJ §3-815(d) are satisfied.

## IV

## Conclusion

For the reasons explained above, we hold that a juvenile court may continue temporary emergency shelter if it has reasonable grounds to find that (1) return of the child to the child's home is contrary to the safety and welfare of the child; and (2) either (i) removal from the home is necessary due to an alleged emergency situation and in order to provide for the safety of the child, or (ii) reasonable efforts were made but were unsuccessful to eliminate the need to remove the child from the home. Any continuation of shelter care beyond 30 days must be based upon findings made applying a preponderance of evidence standard at the adjudicatory stage of the CINA case.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. COSTS TO BE PAID BY RESPONDENTS.**

47