*In re: T.K.*, No. 60, September Term, 2021.

**STATUTORY INTERPRETATION – CHILD IN NEED OF ASSISTANCE – REQUIREMENTS FOR EXERCISE OF DISCRETION UNDER COURTS AND JUDICIAL PROCEEDINGS § 3-819(E).**

A juvenile court has discretion to award custody under § 3-819(e) of the Courts and Judicial Proceedings Article if the juvenile court, by a preponderance of the evidence: (a) sustains allegations in a CINA petition that are sufficient to support a CINA disposition against one, but only one, parent; and (b) finds that the other parent is able and willing to care for the child.

**CHILD IN NEED OF ASSISTANCE – BEST INTEREST OF THE CHILD STANDARD.**

If a juvenile court finds that the prerequisites required to exercise its discretion under § 3-819(e) of the Courts and Judicial Proceedings Article have been met, the best interest of the child is the standard that applies to the court's decision whether and, if so, how to exercise that discretion.

**CHILD IN NEED OF ASSISTANCE – EVIDENTIARY BEST INTEREST HEARING.**

A juvenile court must afford a parent who stands to lose custody as a result of an application of Courts and Judicial Proceedings § 3-819(e) an opportunity to present evidence if, after consideration of the evidence already presented or stipulated at an adjudicatory hearing, there are factual disputes as to any consideration that is material to (a) whether the parent to whom the court is considering awarding custody is able and willing to provide proper care for the child, or (b) the juvenile court's determination of whether it is in the child's best interest to leave the current custody arrangement in place or to award custody (legal, physical, or both) to the parent against whom allegations were not sustained.

Circuit Court for Howard County
Case No. C-13-JV-20-000175
Argued: June 2, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 60

September Term, 2021

_____

IN RE: T.K.

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Fader, C.J.
Hotten, J., dissents.

_____

Filed: July 28, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Parents have a fundamental right to rear their children without unwarranted interference by the State. That right "occupies a unique place in our legal culture, given the centrality of family life as the focus for personal meaning and responsibility." *In re Adoption/Guardianship No. 10941*, 335 Md. 99, 113 (1994) (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 38 (1981) (Blackmun, J., dissenting)). That interest, however, is not absolute, and must be balanced against society's obligation to protect the welfare of children. *See In re Yve S.*, 373 Md. 551, 568-69 (2003).

The General Assembly has adopted a statutory scheme to balance the fundamental right of parents to raise their children with the State's obligation and prerogative to protect a child who requires court intervention for protection. Md. Code Ann., Cts. & Jud. Proc. §§ 3-801 – 3-830 (2020 Repl.; 2022 Supp.). Under that statutory scheme, a child is in need of assistance if the child requires court intervention because, as relevant here, (1) the child has been abused or neglected and (2) the child's parents, guardian, or custodian are unable or unwilling to properly care for the child. *Id.* § 3-801(f)(1), (2). Unless both of those prongs are proven by a preponderance of the evidence, *id.* § 3-817(c), court intervention is unavailable and a court ordinarily must dismiss the child in need of assistance ("CINA") case without further involvement.

The General Assembly, however, has authorized a limited but important exception to that general rule when (1) the allegations of a CINA petition are proven against only one of the child's parents, and (2) another parent is able and willing to provide care for the child's needs. *Id.* § 3-819(e). In that circumstance, ongoing court intervention is still unavailable, but the juvenile court, before dismissing the case, is authorized to "award

custody to the other parent." *Id.* Section 3-819(e) thus permits a juvenile court that is not otherwise able to intervene in a family's affairs to determine the most appropriate custody arrangement for the child as between the child's parents.

We have not previously had the opportunity to provide guidance concerning the mechanics of the application of § 3-819(e) to situations in which a local department of social services has limited knowledge about one of a child's parents until after a CINA adjudicatory hearing has concluded. We now take the opportunity to provide that guidance. Specifically, we are called upon to clarify: (1) when a juvenile court has the discretion to make an award of custody under § 3-819(e); (2) what standard applies to the exercise of that discretion; and (3) when a juvenile court must afford a parent who stands to lose custody as a result of an application of § 3-819(e) an opportunity to present evidence relevant to the court's exercise of authority under that provision. We hold that:

> 1. A juvenile court has discretion to award custody under § 3-819(e) only if the court, by a preponderance of the evidence: (a) sustains allegations in a CINA petition that are sufficient to support a CINA disposition against one, but only one, parent; and (b) finds that the other parent is able and willing to care for the child;
>
> 2. If those prerequisites are established, the best interest of the child is the standard that applies to the court's decision whether and, if so, how to exercise that discretion; and
>
> 3. A juvenile court must afford a parent who stands to lose custody as a result of an application of § 3-819(e) an opportunity to present evidence if, after consideration of the evidence already presented or stipulated at an adjudicatory hearing, there are factual disputes as to any consideration that is material to (a) whether the parent to whom the court is considering awarding custody is able and willing to provide proper care for the child, or (b) the juvenile court's determination of whether it is in the child's best interest to leave the current custody arrangement in place or to award custody

2

(legal, physical, or both) to the parent against whom allegations were not sustained.

Here, the Circuit Court for Howard County, sitting as a juvenile court, made an award of custody under § 3-819(e) to a previously non-custodial father, and the Court of Special Appeals affirmed. However, the record before the juvenile court did not contain evidence that the father was able and willing to care for the child, nor was there a stipulation to that effect, and the mother was not afforded the opportunity to present evidence to inform the court's best interest analysis. Accordingly, we will reverse the judgment of the Court of Special Appeals and remand to that court with instructions to vacate the juvenile court's order and remand for further proceedings described below.

## BACKGROUND

### *The CINA Statutory Scheme*

A child in need of assistance is a child who requires court intervention because:

(1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder;[1] and

(2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs.

Cts. & Jud. Proc. § 3-801(f)(1), (2). Notably, the definition contains two prongs separated by the conjunctive "and," requiring that both prongs be met before a child can be determined to be in need of assistance. *See In re Samone H.*, 385 Md. 282, 316 n.13 (2005)

---

[1] In certain respects, the statutory scheme applies differently to a child who may be determined to be in need of assistance due to a developmental disability or a mental disorder than it does when abuse or neglect is at issue. *See, e.g.*, Cts. & Jud. Proc. §§ 3-815(f)(2); 3-816.1(b)(3); 3-819(b)(1)(ii), (c)(3), (h), (i), (j), (m); 3-823(h)(2)(vii). For purposes of this appeal, we are concerned with children who may be in need of assistance based on prior abuse or neglect and will limit our further discussion to those circumstances.

3

(explaining that for a test conjunctive in nature, each element must be met for the test to be satisfied). Thus, although a finding of abuse or neglect can inform a court's decision concerning a parent's ability or willingness to give proper care, the two prongs are distinct, and both must be satisfied before a court can determine that a child is in need of assistance.

Upon receipt of a complaint of possible abuse or neglect, an investigating local department of social services may file a CINA petition if it determines that the court has jurisdiction[2] and that doing so is in the child's best interest. Cts. & Jud. Proc. § 3-809(a). A CINA petition must "allege that [the] child is in need of assistance and shall set forth in clear and simple language the facts supporting that allegation." *Id.* § 3-811(a)(1).

A CINA case proceeds in two phases.[3] First, the juvenile court holds an adjudicatory hearing "to determine whether the allegations in the [CINA] petition, other than the allegation that the child requires the court's intervention, are true." *Id.* § 3-801(c). The rules of evidence apply at an adjudicatory hearing, and the local department must prove its allegations by a preponderance of the evidence. *Id.* § 3-817(b), (c).

---

[2] Section 3-803(a)(2) of the Courts and Judicial Proceedings Article provides juvenile courts with exclusive original jurisdiction over "[p]roceedings arising from a petition alleging that a child is [in need of assistance.]"

[3] A CINA proceeding may also involve a request for shelter care, which is "a temporary placement of a child outside of the home at any time before disposition." Cts. & Jud. Proc. § 3-801(bb); *see also id.* § 3-815 (addressing shelter care proceedings). However, "[s]helter care is not a component of every CINA case. Rather, it involves a separate proceeding in which the juvenile court decides whether to authorize interim protection for a child who may be at risk in the home while the CINA petition is pending." *In re O.P.*, 470 Md. 225, 237 (2020). There was no request for shelter care in this case.

4

Second, unless the CINA petition is dismissed, the court must "hold a separate disposition hearing . . . to determine whether the child is [in need of assistance]." *Id.* § 3-819(a)(1). At a disposition hearing, the juvenile court has the discretion to decline to require the strict application of the rules of evidence. *In re M.H.*, 252 Md. App. 29, 43 (2021) (citing Md. Rule 11-115(b)); *see also* Md. Rule 5-101(c)(5).

If at a disposition hearing the juvenile court determines that the child is in need of assistance, it may take either of two actions: (1) "Not change the child's custody status;" or (2) "Commit the child on terms the court considers appropriate to the custody of" a parent, a relative or other individual, a local department of social services, or the Maryland Department of Health. *Id.* § 3-819(b)(1)(iii). On the other hand, if the juvenile court determines that the child is not in need of assistance, it must, "except as provided in subsection (e) of this section, dismiss the case." *Id.* § 3-819(b)(1)(i).

Subsection (e) of § 3-819, which is at the center of the present dispute, provides:

> If the allegations in the petition are sustained against only one parent of a child, and there is another parent available who is able and willing to care for the child, the court may not find that the child is a child in need of assistance, but, before dismissing the case, the court may award custody to the other parent.

That subsection thus provides a juvenile court with express authority to make an award of custody as between the child's parents, if the statutory prerequisites are met, notwithstanding that the child (1) cannot be determined to be in need of assistance and (2) therefore cannot be subject to ongoing court intervention. If a juvenile court decides to exercise that authority, its custody order "[r]emains in effect" even "[a]fter the court terminates jurisdiction[.]" *Id.* § 3-804(c)(1).

With that statutory background in mind, we turn to the facts of this case.

### *The Department's Involvement with the K. Family*

This case concerns the custody of T.K., born in late 2015 or 2016.[4] The other primary parties involved are T.K.'s mother, N.K. ("Mother"); father, T.R. ("Father"); and older sister, Ta.K. Ta.K. is not a party to this appeal, and her custody is not in dispute.[5]

The Howard County Department of Social Services (the "Department") became involved with the K. family in May 2020 to assist Mother, T.K., and Ta.K. in obtaining stable housing. At the time, Father was living in Georgia and was not involved in T.K.'s care. In October 2020, the Department filed petitions seeking to have both children declared in need of assistance, which the Department later amended. The Department did not seek to place T.K. in shelter care. As a result, T.K. resided with Mother throughout the CINA proceedings.

---

[4] T.K.'s year of birth is stated in documents in the record as 2020, 2015, and 2016. The first appears to be an obvious error. As between the other two, the record does not resolve which is correct, nor do the parties' briefs filed in this Court, as Mother's brief states that T.K. was born in 2015 and the Department's brief, the statement of facts from which is adopted in T.K.'s brief, states that he was born in 2016. Which year is correct is immaterial to our analysis.

[5] During T.K. and Ta.K.'s combined adjudicatory hearing, Mother and the Department agreed to stipulated facts with respect to Ta.K., who, unlike T.K., has developmental and physical disabilities. Mother and the Department further agreed that at disposition, Ta.K. should be determined to be in need of assistance and placed in the custody of her maternal grandmother.

*Adjudication*

An adjudicatory hearing was held in January 2021 before a magistrate.[6] Father, whose paternity had not yet been established, attended the hearing but did not participate. During the hearing, Mother and the Department agreed to stipulate to some, but not all, of the allegations of the amended CINA petition. As amended through negotiation between Mother and the Department,[7] the stipulated facts included:

- T.K. lived with Mother and Ta.K. in Mother's apartment in Elkridge.

- Mother has Type I diabetes and was hospitalized three times since the case opened. When hospitalized, she relies on her mother and brother to care for the children. Mother has a medical marijuana card for diabetes-related nausea.

- Late on June 25, 2020, Mother, who had been drinking, left the children at an apartment in the care of an individual who Mother knew had also been drinking. Upon returning to the apartment, Mother learned that the individual had hit Ta.K. with a belt and a spatula, causing bruises, and had also pulled

---

[6] Section 3-807 of the Courts and Judicial Proceedings Article authorizes the appointment of magistrates to conduct both adjudicatory and disposition hearings and to "make findings of fact, conclusions of law, and recommendations as to an appropriate order" in a CINA case. *Id.* § 3-807(b)(1), (2). A magistrate's proposals and recommendations are not final orders but may be adopted by the juvenile court without further proceedings unless a party files written exceptions and requests either a de novo or an on-the-record hearing by the juvenile court. *Id.* § 3-807(c), (d).

[7] The written CINA adjudication order contains some allegations of the amended petition that were not included in the stipulation. However, the order specifies that the allegations were "proven by a preponderance of the evidence" only "as amended on the record." As a result, we consider the allegations contained in that order and in the subsequent disposition order to be sustained only to the extent that they were adopted on the record in the transcript of the adjudicatory hearing.

7

out some of Ta.K.'s hair. Based on that incident, Mother was indicated for neglect of both children.[8]

- As part of a safety plan, the children were not permitted to be at the apartment at which Ta.K. had been hit. Nonetheless, Mother once called the Department to ask if she could go see an individual who lived there. The individual Mother wanted to see was not the individual who had previously hit Ta.K.

- Mother previously had housing until October or November of 2017, and since November 2020 had rented a three-bedroom apartment.

- A family involvement meeting occurred in September 2020 at which other family members decided to work together to create a plan to assist Mother.

- In October 2020, Mother informed the Department that T.K. got hold of a stair railing pole and hit Ta.K., cutting her eye. Mother iced Ta.K.'s injury but did not take her to a physician.

- The Department referred Mother to therapy, which Mother attended at first and then discontinued. Mother had been enrolled in once-a-week individual therapy through Families First since November 2020.

The only fact concerning Father addressed in the stipulation—or, indeed, alleged in the amended petition—was that he was then living in Stone Mountain, Georgia.

Following the stipulation, counsel for the Department noted that if the court were to find T.K. to be in need of assistance at disposition, Mother and the Department agreed to the Department's dispositional recommendation, which was that custody remain with

---

[8] Neglect is defined as "the leaving of a child unattended or other failure to give proper care and attention to a child . . . under circumstances that indicate: (1) That the child's health or welfare is harmed or placed at substantial risk of harm; or (2) That the child has suffered mental injury or been placed at substantial risk of mental injury." Cts. & Jud. Proc. § 3-801(s).

Mother under an order of protective supervision. However, counsel also observed that Father, if confirmed as T.K.'s biological father, was expected to argue that there should be no CINA determination because he was "a fit and proper parent."

Following the adjudicatory hearing, the juvenile court entered an order finding the facts as stipulated to be proven by a preponderance of the evidence.

### *Disposition*

In February 2021, the parties appeared before the magistrate for a scheduled disposition hearing. At the outset, the Department informed the magistrate that it intended to dismiss the petition because Father had been confirmed as T.K.'s biological father and was "present[ing] himself as a fit and proper parent."[9] Mother objected and sought to present evidence that Father was not a fit and proper parent and that it was not in T.K.'s best interest to change custody. Relying primarily on an unreported opinion from the Court of Special Appeals,[10] Mother argued that the juvenile court was required to conduct a best interest analysis before changing custody. She also proffered that, if permitted to present evidence, she would offer testimony to the effect that Father had abandoned T.K. and had been abusive to T.K., Mother, and another former partner with whom he shared a child.

---

[9] Mother, who had been hospitalized on an emergency basis, did not appear but was represented by counsel. Mother's counsel requested a postponement, to which other parties objected. The magistrate denied the postponement on the ground that if Father was willing and able to care for T.K., as the Department asserted, there was no need to proceed to disposition at all.

[10] Pursuant to Rule 1-104, unreported appellate opinions are neither precedent nor persuasive authority and may not be cited in any court of the State except for limited reasons, none of which are applicable here. Md. Rule 1-104(a), (b).

9

Father, in turn, asserted that he had not abandoned T.K. and stated that he had four witnesses who could offer testimony on his behalf.

The magistrate ultimately decided that the Department had the right to dismiss its case and so recommended dismissal on the Department's motion. The magistrate also recommended an award of full legal and physical custody to Father pursuant to the authority granted by § 3-819(e) of the Courts and Judicial Proceedings Article. Mother filed exceptions and requested a de novo hearing before the juvenile court.[11]

At the de novo hearing, the Department again stated that it was "seeking to withdraw or dismiss" the case. The Department explained that it believed that result was compelled by *In re Russell G.*, 108 Md. App. 366 (1996), in which the Court of Special Appeals held that a child cannot be adjudicated in need of assistance if either of the child's parents is able and willing to provide proper care and attention to the child. Because the Department had done its "due diligence," found Father to be "willing and able to provide proper care and attention to [T.K.]," and believed him to be "in fact a fit and proper parent," the Department concluded that T.K. could not be adjudicated in need of assistance and that

---

[11] Mother's Notice of Exceptions states only that she "files this exception to this Honorable Court's findings as identified in its Report and Recommendations," without identifying any specific challenge. Section 3-807(c)(1) of the Courts and Judicial Proceedings Article states that a party who files "exceptions to any or all of the magistrate's findings, conclusions, and recommendations [ ] shall specify those items to which the party objects." Because no party raised before the juvenile court or in their appellate briefs the issue of whether Mother's exceptions satisfied § 3-807(c), we will not address it. *See* Md. Rule 8-131(a).

10

dismissal was therefore required.[12]  The Department did not request "any specific Court disposition as to custody" upon dismissal of its petition.  It did, however, confirm that it had intended to request that T.K. be placed with Mother under an order of protective supervision if the matter had proceeded to disposition.

Mother did not object to dismissal of the CINA case but argued that the juvenile court should do so without making an award of custody.  If the court would not do that, Mother argued that it was required to conduct a best interest analysis, and take evidence to inform that analysis, before making an award of custody.  Mother emphasized that awarding custody to Father would remove T.K. from the only parent he had ever really known, uproot him from his family, and move him to another state.

Father argued that the petition should be dismissed and that the court should award him custody.  He contended that it would not make sense and would not be in T.K.'s best interest to leave custody with a parent who had neglected T.K. when there was "another biological parent -- who also has a Constitutional right to raise that child -- [and who] is ready, willing, and available."

Although the juvenile court did not formally invite proffers of evidence from the parties, counsel for Father, Mother, and the Department each made partial, informal proffers during the hearing.  Father's counsel proffered that Father was present during the first years of T.K.'s life, before Mother prevented his further involvement with the child,

---

[12] The Department, citing *In re Najasha B.*, 409 Md. 20, 43 (2009), recognized that it would not be permitted to unilaterally dismiss its petition over T.K.'s objection, but observed that T.K. did not object to dismissal.

and that Father would ensure that Mother would have access to T.K. if the child were to be placed in his custody. Father also had concerns about Mother's ability to care for T.K. due to her hospitalizations and medical history.

Mother's counsel proffered that she was prepared to present a witness who shared a child with Father and who would testify: (1) to Father's "abusive manner towards her and towards the child"; and (2) that Father "plays no role in that child's life."[13] Counsel also proffered that Mother would testify that Father had been abusive toward herself and toward T.K., including an incident in which Father had "attempt[ed] to teach [T.K.] about fire by lighting a flame to his arm," which Father justified by saying "how else do you teach a child about fire?"[14]

The Department's counsel proffered that it had cleared Father and all adult members of his household, verified Father's employment, conducted a video tour of his home, and that Father had acted appropriately in his interactions with the Department.

After wrestling with whether to take testimony or remand to the magistrate for that purpose, the juvenile court decided to close the CINA case and award custody to Father without taking testimony. Acknowledging that its award of custody to Father was

---

[13] The Department suggests that the proffers that the witness would testify both that Father had been abusive and that he was uninvolved are "internally contradictory." Although there is a possible interpretation of the proffers that is inconsistent, another interpretation is that the witness would have testified that Father was abusive when he was involved with her and her son and that he subsequently abandoned them.

[14] Mother interprets this proffer as suggesting that Father lit a flame to T.K.'s arm. T.K.'s attorney interprets it as indicating that Father lit a flame to Father's own arm. In context, the former seems much more likely, but the record does not provide a definitive answer because the testimony was not permitted.

12

discretionary, the court stated that, based on the arguments and its review of the petition, it would "find that – even without hearing any other proffer or any other testimony – that it is in the child's best interest to be placed with the parent that is willing and able[.]"  The court subsequently issued a written order granting Father "sole legal and physical custody of [T.K.], with reasonable and liberal visitation with the mother . . . at times, and as can be arranged by the parties."

Mother noted a timely appeal to the Court of Special Appeals, which affirmed.  *In re T.K.*, No. 292, Sept. Term, 2021, 2021 WL 5200223 (Md. Ct. Spec. App. Nov. 9, 2021).  Although the intermediate appellate court agreed with Mother that a juvenile court's transfer of custody under § 3-819(e) of the Courts and Judicial Proceedings Article is discretionary and "that a child's best interest is always paramount," *id.* at *5, the court held that Mother was not entitled to a separate evidentiary hearing to present evidence of Father's ability to provide care for T.K., *id.* at *5-6.  The court considered Mother's proffers insufficient to create a dispute of material fact and concluded that the juvenile court had "ample evidence" to find that Father was able and willing to care for T.K. and that an award of custody to Father was in T.K.'s best interest.  *Id.* at *6.

Mother filed a petition for a writ of certiorari, which we granted.  *In re T.K.*, 477 Md. 381 (2022).

## DISCUSSION

### *Standard of Review*

This Court reviews CINA determinations utilizing three interrelated standards of review.  *In re Yve S.*, 373 Md. 551, 586 (2003) (quoting *Davis v. Davis*, 280 Md. 119,

13

124-26 (1977)). Factual findings by the juvenile court are reviewed for clear error. *In re Yve S.*, 373 Md. at 586. Matters of law are reviewed without deference to the juvenile court. *Id.* Ultimate conclusions of law and fact, when based upon "sound legal principles" and "factual findings that are not clearly erroneous," are reviewed under an abuse of discretion standard. *Id.*

We granted Mother's petition for writ of certiorari to consider (1) what standard applies to a juvenile court's discretion to make an award of custody under § 3-819(e), and (2) when a juvenile court must afford a parent who stands to lose custody as a result of an application of § 3-819(e) an opportunity to present evidence.[15] We address those issues, respectively, in Parts II and III below. As a predicate to addressing those issues, we must first clarify *when* a juvenile court has discretion to make an award of custody under § 3-819(e), which is the question to which we turn in Part I.

---

[15] In her brief, Mother raises two additional, related questions. First, she asks whether our recent opinion in *In re R.S.*, 470 Md. 380 (2020), compels a juvenile court to award full custody to a non-custodial parent if the court sustains petition allegations against only one parent. Mother argues that it does not, and neither the Department nor T.K. take a contrary position. Instead, they acknowledge that the decision whether to award custody pursuant to § 3-819(e) is discretionary. Father, on the other hand, argues that the "non-offending [parent] is entitled to custody of the child" in the absence of a finding that the other parent is unable or unwilling to provide appropriate care. For reasons explained at length below in addressing the other issues Mother raises, § 3-819(e) does not compel a juvenile court to award custody merely because the statutory prerequisites are satisfied. To the contrary, § 3-819(e) provides a juvenile court with discretion to award custody, which must be exercised in accord with the best interest of the child. *R.S.* is not to the contrary.

Second, Mother asks whether the evidence before the juvenile court was sufficient to sustain the court's award of custody. Because we conclude that the juvenile court erred in declining to hear additional evidence, we will not separately address that question.

14

**I.**

Parents have a constitutionally protected right to raise their children as they choose, free from excessive intrusion by the State, a liberty interest long recognized by the United States Supreme Court. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981); *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942). "Maryland has consistently echoed the Supreme Court, declaring a parent's liberty interest in raising a child a fundamental one that cannot be taken away unless clearly justified." *In re Yve S.*, 373 Md. at 566. A CINA proceeding provides a mechanism to determine whether government intrusion in a parent's relationship with a child is clearly justified. "[A]dhering to statutory requirements, both procedural and substantive, is critical when the safety of the child and the fundamental rights of parents are at issue." *In re M.H.*, 252 Md. App. 29, 44 (2021).

By its express terms, § 3-819(e) includes two prerequisites to a juvenile court's discretionary authority to "award custody to the other parent." First, "the allegations in the petition [must be] sustained against only one parent of a child[.]" *Id.* Second, there must be "another parent available who is able and willing to care for the child." *Id.* If both prerequisites are met, the juvenile court: (1) may not adjudicate the child in need of assistance; and (2) must dismiss the case; but (3) before doing so, "may award custody to the other parent." *Id.* In this Part, we will explore the two prerequisites to the juvenile court's authority to exercise discretion under § 3-819(e).

15

## A.

The first prerequisite to a court's authority to award custody pursuant to § 3-819(e) is that the court must have sustained the allegations in the petition against only one parent. That, however, begs the questions of which "allegations in the petition" must be sustained and what it means to sustain them "against" a parent. Answering those questions requires resort to our standard rules of statutory interpretation. "As in any question of statutory interpretation, the goal is to discern and implement the intent of the Legislature." *In re O.P.*, 470 Md. 225, 255 (2020). In doing so, we begin "with the text of the particular provision within the context of the statutory scheme of which it is part." *Id.* Review of the legislative history, as well as prior caselaw concerning the provision or similar provisions, may provide guidance and "help confirm conclusions drawn from the text or resolve its ambiguities." *Id.* "Finally, consideration of the consequences of alternative interpretations of the statute grounds the analysis." *Id.*

The plain text of § 3-819(e) does not identify which "allegations in the petition" must be sustained or what it means to say they are sustained "against" just one parent. Here, the single allegation made in the amended petition as to Father—that he lived in Stone Mountain, Georgia—was sustained. By contrast, only some of the allegations in the amended petition against Mother were sustained, as a result of the parties' negotiated stipulation. How are we to measure whether enough of "the allegations in the petition" were sustained "against" either parent for purposes of invoking § 3-819(e)?

To obtain a more fulsome understanding of the legislative intent, we consider the role of the CINA petition in the broader statutory scheme. *See State v. Bey*, 452 Md. 255,

16

266 (2017) ("We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone."). Pursuant to § 3-811(a)(1) of the Courts and Judicial Proceedings Article, a CINA petition must "allege that a child is in need of assistance and shall set forth in clear and simple language the facts supporting that allegation." Rule 11-205(e) includes a substantially similar requirement and further requires that a CINA petition include specified information about the petitioner (here, the Department), the child, and the child's parents, guardians, or custodians; the basis for the court's jurisdiction; the names and addresses of known witnesses; and whether the child is in shelter care.

A CINA petition is thus required to include basic factual allegations to support a petitioner's claim that the child is in need of assistance. Because a child can be adjudicated in need of assistance only if (1) the child has been abused or neglected,[16] and (2) "[t]he child's parents, guardian, or custodian are unable or unwilling to give proper care" to the child, Cts. & Jud. Proc. § 3-801(f), it necessarily follows that a CINA petition must support both prongs of the definition, *see In re M.H.*, 252 Md. App. at 42 (observing that "[t]he facts in the petition must support an allegation that the child" meets both prongs of the CINA definition). Although the same factual allegations may support both prongs, *see In re Adriana T.*, 208 Md. App. 545, 570 (2012) ("It has long been established that a parent's past conduct is relevant to a consideration of the parent's future conduct."), the prongs are

---

[16] As reflected in footnote 1, the first requirement can also be satisfied if the child has a developmental disability or a mental disorder. Cts. & Jud. Proc. § 3-801(f). Because provisions related to those bases for a CINA adjudication are not at issue in this case, we do not discuss them here.

17

analytically distinct and must both be addressed. A CINA petition, therefore, must allege facts that, if sustained, would be sufficient to support a determination that both prongs of the CINA definition—past abuse or neglect *and* a present inability or unwillingness to provide proper care—are satisfied.[17]

The allegations in a CINA petition are then tested at the adjudicatory hearing, the purpose of which is "to determine whether the allegations in the petition, other than the allegation that the child requires the court's intervention, are true." Cts. & Jud. Proc. § 3-801(c). Thus, the first prerequisite to the exercise of discretion under § 3-819(e) requires that, following the adjudicatory hearing, the juvenile court will have sustained allegations in the petition that are sufficient to support determinations that: (1) the child has been abused or neglected; and (2) one of the child's parents is unable or unwilling to provide proper care for the child.

Our interpretation is consistent with the broad purpose of the CINA statute, which "is to ensure that juvenile courts (and local departments of social services) exercise authority to protect and advance a child's best interests when court intervention is required," *In re Najasha B.*, 409 Md. 20, 33 (2009), as well as with the State's "*parens patriae* 'interest in caring for those, such as minors, who cannot care for themselves,'" *id.* (quoting *In re Mark M.*, 365 Md. 687, 705-06 (2001)), because it provides an avenue for

---

[17] For reasons generally set forth in the Court of Special Appeals' decision in *In re E.R.*, 239 Md. App. 334, 341 (2018), it will often not be possible for a local department to set forth specific factual allegations as to the willingness or ability to provide care of a parent whose existence the department may not even be aware of, or as to whom the department may have only very limited information, at a time when it is necessary to file a petition.

court action to protect a child who is at risk in the care of one parent, even though the child does not fully meet the definition of being in need of assistance.

Our interpretation is also consistent with the legislative history of § 3-819(e), which was enacted in response to the decision of the Court of Special Appeals in *In re Russell G.*, 108 Md. App. 366 (1996). There, the juvenile court had determined that a child was in need of assistance based on sustained allegations that (1) the custodial mother had repeatedly neglected the child and was unable or unwilling to provide care for the child due to her alcoholism, and (2) the non-custodial father was unable or unwilling to provide care for the child due to willful ignorance of the mother's alcoholism and a lack of legal custody of the child. *Id.* at 370-72. The intermediate appellate court took no issue with the juvenile court's findings with respect to the mother but concluded that there was no evidence to support the sustained allegations with respect to the father. *Id.* at 379-80. As a result, the court held that the child could not be adjudicated in need of assistance and there was no basis for the court to exercise continuing jurisdiction over the child. *Id.* at 380. *Russell G.* thus identified a loophole in the CINA statute because the juvenile court, lacking any basis to exercise jurisdiction over the child or order a transfer of custody, was powerless to protect him even though the child remained at risk in the mother's care.

In response to *Russell G.*, the General Assembly enacted what is currently § 3-819(e).[18] *See* 2001 Md. Laws, ch. 415 (S.B. 660). The provision was thus intended to

---

[18] The provision, which was initially codified as § 3-819(d), was originally proposed by the Maryland Judicial Conference. *See* Maryland Judicial Conference, The Foster Care Court Improvement Project (FCCIP) Implementation Committee, Summary of Senate Bill

respond to a situation in which petition allegations sufficient to support both prongs of a CINA disposition are sustained against only one custodial parent.

**B.**

The second prerequisite to a juvenile court's authority to award custody under § 3-819(e) is that "there is another parent available who is able and willing to care for the child." Notably, and critically here, there is an important distinction between the absence of a finding that both parents are unable or unwilling to provide proper care for purposes of the CINA determination—which would be enough to preclude a determination that a child is in need of assistance—and the finding required by § 3-819(e). The distinction arises from the differing allocations of the burdens of proof for those determinations.

With respect to a CINA determination, a local department may fail to carry its burden to prove by a preponderance of the evidence that one of a child's parents is unable or unwilling to provide proper care for the child in multiple ways, including: (i) the court may not be convinced by the department's evidence that the parent is unable or unwilling; (ii) the court may be convinced that the parent *is* able and willing by more persuasive evidence presented by another party; or (iii) as here, the department may opt not to present any evidence on the subject. In any of those scenarios, the court could not determine the child to be in need of assistance, but only in scenario (ii) would there be an affirmative finding that one parent is able and willing to provide proper care.

---

660 and House Bill 754 (Feb. 14, 2001); *see also* Senate Judicial Proceedings Committee, *Bill Analysis: Senate Bill 660* at 4 (2001).

By contrast, the second prerequisite for the exercise of discretion under § 3-819(e) requires a finding that the parent to whom the court is considering awarding custody—the "other parent," in the language of the statute—is available, willing, and able to provide proper care. A finding that the local department failed to carry its burden to prove otherwise is, for that purpose, insufficient, because it is the proponent of the transfer of custody who bears the burden of proving that the prerequisites are satisfied. It is, after all, the proponent of an award of custody who is seeking not just dismissal of the petition, but the juvenile court's affirmative adjustment of a private custody arrangement.

In summary, for a juvenile court to be authorized to award custody to a parent pursuant to § 3-819(e), the juvenile court must: (1) have sustained allegations in the CINA petition sufficient to find both that the child has been abused or neglected and that one parent is unable or unwilling to provide care; and (2) find that the "other parent" is able and willing to provide care for the child.

## II.

If the two prerequisites to the juvenile court's exercise of discretion under § 3-819(e) are satisfied, the court then must decide whether to exercise that discretion. Although Mother identifies the standard applicable to that exercise of discretion as a matter of first impression, all parties to this appeal, the juvenile court, and the Court of Special Appeals agree that the applicable standard is the best interest of the child. We agree as well.

"[T]he child's best interest has always been the transcendent standard in adoption, third-party custody cases, and T[ermination of Parental Rights] proceedings." *In re Adoption of Ta'Niya C.*, 417 Md. 90, 112 (2010). "[O]ur case law has been clear and

21

consistent, that, even in contested adoption and TPR cases . . ., the best interest of the child remains the ultimate governing standard." *In re Adoption of Jayden G.*, 433 Md. 50, 67-68 (2013) (quoting *In re Adoption/Guardianship of Rashawn H.*, 402 Md. 477, 496 (2007)); *In re Ta'Niya C.*, 417 Md. at 94 ("[T]he paramount consideration identified in the [TPR] statute . . . is the 'best interests of the child[.]'"). Similarly, "[t]he broad purpose of the CINA statute is to ensure that 'juvenile courts (and local departments of social services) exercise authority to protect and advance a child's best interests when court intervention is required.'" *In re M.H.*, 252 Md. App. at 41-42 (citing *In re Najasha B.*, 409 Md. at 33); *see In re Ashley S.*, 431 Md. 678, 715 (2013) ("[T]he overarching consideration in approving a permanency plan is the best interests of the child[.]"). "The courts have said time and again that the best interest standard is dispositive in custody awards." *In re Yve S.*, 373 Md. at 570; *see also In re Rashawn H.*, 402 Md. at 494 ("In [the custody] setting, the governing standard, here and throughout the country, is and long has been the child's best interest.").

So too here, the best interest of the child standard is applicable to the juvenile court's exercise of discretion under § 3-819(e). Thus, a juvenile court should exercise its discretion to award custody of a child to the parent who it finds available, willing, and able to provide care only if it determines that doing so is in the best interest of the child.

### III.

The final legal question raised by Mother's appeal is when is a parent, whose custody is in jeopardy due to a request that a juvenile court award custody to the "other parent" pursuant to § 3-819(e), entitled to a hearing at which that parent can present

22

evidence. Before the juvenile court, the Department took the position that because it (the Department) sought to dismiss its CINA petition based on its conclusion that Father was able and willing to provide proper care for T.K., the court had no choice but to dismiss the case promptly. As a result, the Department reasoned, any custody determination had to be made without any further evidentiary proceedings. That position was based on the Department's interpretation of the Court of Special Appeals' decision in *Russell G.* However, in direct response to *Russell G.*, the General Assembly adopted § 3-819(e), which gives courts the authority in certain cases to make an award of custody to the "other parent" before giving up jurisdiction over the case. We see nothing in the statute that would preclude a juvenile court from holding a hearing to determine whether and, if so, how to exercise that authority. To the contrary, inherent in the grant of authority under § 3-819(e) is the ability to conduct appropriate proceedings to properly exercise that authority.

On appeal, the Department now agrees that in most cases a juvenile court should conduct an evidentiary hearing before making a custody determination pursuant to § 3-819(e). As a general matter, we agree. Depending on the case, such a hearing may address whether the court has authority to award custody pursuant to § 3-819(e)—in other words, whether the statutory prerequisites are satisfied—and, if so, whether and how it should exercise that authority.[19] Although such a hearing may be unnecessary in some

---

[19] It is of course possible that in a § 3-819(e) hearing, the parent against whom the allegations of the petition were sustained might succeed where the local department had not, and prove that the "other parent" is, in fact, unable or unwilling to provide care for the child, based on evidence that was not presented or that could not have been presented at the adjudicatory hearing. If that is the case, the court may not award custody to the "other

23

(perhaps many) cases in light of evidence already presented at the adjudicatory hearing or by stipulation of the parties, in other cases additional evidence not yet presented may be relevant. That is especially true when, as here, little or no evidence was presented at the adjudicatory hearing about a non-custodial parent who subsequently seeks an award of custody pursuant to § 3-819(e).

The Department, Father, and T.K. all take the position that a juvenile court may rely on proffers from counsel, if not contradicted, both to establish that the "other parent" is able and willing to care for the child and to serve as the basis for a court's best interest determination. They further contend that proffers made in this case by the Department and Father were sufficient for both purposes. There are two problems with that argument as applied to this case. The first is that proffers are not evidence and, where the matter is contested, cannot provide the basis for necessary factual findings. The second problem, which we discuss in Part IV, is that the proffers at issue here were contradicted.

A proffer, as used here, refers to an offer of the evidence a witness could provide if permitted to testify. *Proffer*, *Black's Law Dictionary* 1463 (11th ed. 2019); *see also In re M.H.*, 252 Md. App. at 54. Proffers are not evidence and "are not a substitute for the witnesses' testimony." *Kelly v. State*, 392 Md. 511, 532 (2006). In a CINA case, absent a stipulation as to the relevant facts, a court may not resolve a contested issue of fact in favor of a party bearing the burden of proof by a preponderance of the evidence based solely on the proffers of counsel. *See In re M.H.*, 252 Md. App. at 29, 49, 51-54 (holding that

parent" and, because the petition will not yet have been dismissed, should proceed to disposition to determine whether the child is in need of assistance.

24

findings of fact based solely on proffers of counsel and an unadmitted shelter care report were necessarily clearly erroneous because neither of those sources constitutes "evidence to substantiate the allegations in the Petition"). Indeed, the Court of Special Appeals has held that even in a shelter care hearing, at which the rules of evidence do not apply, *see* Md. Rule 11-101(b)(3)(A), where there is a factual dispute, "unless the disputed allegation is probatively inconsequential to a determination of whether . . . removal from the home is necessary to provide for the safety and welfare of the child, the court must receive testimony as to the material, disputed allegations[.]" *In re Damien F.*, 182 Md. App. 546, 584 (2008).

We hold that when a party asks a juvenile court to make an award of custody under § 3-819(e), if requested by the parent who stands to lose custody, a juvenile court must hold an evidentiary hearing if, after consideration of the evidence already presented or stipulated at an adjudicatory hearing, there are factual disputes as to any consideration that is material to (a) whether the parent to whom the court is considering awarding custody is able and willing to provide proper care for the child, or (b) the juvenile court's determination of whether it is in the child's best interest to leave the current custody arrangement in place or to award custody (legal, physical, or both) to the parent against whom allegations were not sustained. However, such a hearing need not look identical to a best interest custody hearing of the type that would ordinarily occur in a family law case, nor must an overburdened juvenile court hold an evidentiary hearing when all the evidence that is relevant and material is already in the record. The sustained findings that the juvenile court must necessarily already have made in a CINA adjudicatory proceeding to

25

satisfy the first prerequisite to the exercise of discretion under § 3-819(e) will, in many cases, likely obviate the need to consider evidence relating to many of the factors that would otherwise be relevant to a custody determination. As a result, although consideration of the factors listed in *Montgomery County Department of Social Services v. Sanders*, 38 Md. App. 406 (1977), and *Taylor v. Taylor*, 306 Md. 290 (1986), will often be helpful to a juvenile court conducting a § 3-819(e) best interest analysis, the juvenile court should exercise its discretion in determining which factors and what evidence may be relevant to the best interest determination it must make in each individual case.

**IV.**

We now turn to an application of the principles we have set forth to the dispute before us. We discern no error with respect to the standard the juvenile court applied, which was the best interest of the child. However, based on the principles set forth above, the juvenile court erred in concluding that a hearing was not required in two respects. First, the record before the juvenile court at the time it awarded custody to Father did not contain any evidence to support the court's finding on the contested issue of Father's willingness and ability to care for T.K. Although the Department proffered that its "due diligence" caused it to conclude that Father was able and willing to provide care for T.K. and that Father was a fit and proper parent, neither the Department nor Father sought the admission of evidence to that effect. The juvenile court thus lacked a factual basis for its finding that Father was able and willing to provide care for T.K.

The Department contends that the juvenile court nonetheless did not err in declining to hold a hearing because Mother had previously stipulated that Father was able and willing

26

to provide care. At the disposition hearing, however, Mother argued repeatedly that the court should not award custody to Father without affording her the opportunity to present evidence that, among other things, Father was not able and willing to provide care for T.K. and that he was not a fit and proper parent.[20] The Department's current argument that Mother nonetheless stipulated that Father was able and willing to provide care relies on a single passage in the transcript of the argument in which, after being asked Mother's position on whether the Department was permitted to dismiss its petition, Mother's counsel stated:

> I understand that the Department has done their investigation and they believe that [Father] is a fit and proper parent in accordance with *Russell G.*
>
> That primarily [unintelligible] the basis to support the plea finding against Mother and they have a parent who is ready, willing, and able. That's basically what *Russell G.* says. And so those two components were met.

Read in isolation, that passage is at best ambiguous. In the context of Mother's other arguments during that hearing, however, it is plain that she was not stipulating that Father

---

[20] At oral argument, Mother for the first time argued that she was denied the opportunity to present evidence that she was able and willing to provide care for T.K. Although she did not make that argument before the juvenile court, Mother insists that her intent to present that evidence was implicit based on the witness list she provided before the disposition hearing. However, Mother argued that she should be permitted to present evidence of Father's fitness, not her own. By failing to present that argument to the juvenile court, Mother waived it. *See* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"). We nevertheless observe that unless the nature of the abuse or neglect proven by the sustained allegations makes it clear that there are no circumstances in which it would be in the best interest of the child to continue in the custody of the parent against whom allegations of a CINA petition have been sustained, that parent should ordinarily be permitted to present new evidence at a § 3-819(e) hearing that is relevant to the court's best interest analysis, including evidence concerning that parent's own fitness to retain custody.

was able and willing to provide care to T.K. It is thus notable that at oral argument, the Department conceded that if Mother had not stipulated to that finding, the juvenile court should have held an evidentiary hearing on the issue.

Second, even if the juvenile court had properly found that Father was able and willing to provide care for T.K., in this case, a hearing was still required to inform the court's best interest analysis in this case. *See Sewell v. State*, 239 Md. App. 571, 619 (2018) ("Relevance is a question of law, which [the Court] review[s] *de novo*."). When a court makes a custody determination, it is called upon to make a prediction about the custody arrangement that is in the child's best interest. *See Domingues v. Johnson*, 323 Md. 486, 499 (1991) (explaining that in rendering a custody determination "[t]he fact finder is called upon to evaluate the child's life chances in each of the homes competing for custody and then to predict with whom the child will be better off in the future." (quoting *Sanders*, 38 Md. App. at 419)). Section 3-819(e) provides the juvenile court with a binary choice: (1) close the CINA case without altering the existing custody arrangement; or (2) award custody to the parent against whom allegations in the CINA petition that are sufficient to support a CINA determination were not sustained.[21] Here, as in many CINA cases, the

---

[21] The second option encompasses multiple sub-options, as "custody" is not an all-or-nothing proposition, with one parent receiving all of it and the other receiving none of it. Custody is comprised of legal custody, which "'carries with it the right and obligation to make long range decisions' that significantly affect a child's life," and physical custody, which "'means the right and obligation to provide a home for the child and to make' daily decisions as necessary while the child is under that parent's care and control" and includes parenting time or visitation. *Santo v. Santo*, 448 Md. 620, 627 (2016) (quoting *Taylor*, 306 Md. at 296). A juvenile court's decision to award custody to the "other parent" thus necessarily involves determinations with respect to both legal custody (whether sole or

existing custody arrangement was not formalized by an order from any court, so both parents had equal legal custodial rights, but Mother had de facto sole legal and physical custody of T.K. In deciding whether to exercise its discretion under § 3-819(e), it was thus incumbent on the court to determine whether T.K.'s best interest lay in maintaining the current custody arrangement, with either party free to then seek a change to it by filing a family law action, or in providing additional custodial rights to Father.

Here, the juvenile court determined that it did not need to consider any additional evidence to reach a determination as to T.K.'s best interest. In doing so, the court relied primarily on its findings that Mother had neglected T.K. and that Father was able and willing to provide care. Although we recognize that there will be cases in which a juvenile court's adjudicatory findings might establish that custody with one parent rather than another is in a child's best interest without the need to consider any additional evidence, multiple considerations demonstrate that that is not the case here.

First, as discussed, the court's finding that Father was able and willing to provide proper care for T.K. was not supported by any stipulation or by any evidence in the record. It could not, therefore, provide an evidentiary basis for determining that T.K. would be better off in Father's care than in Mother's.

Second, even if Father or the Department had introduced some evidence to support their conclusion that Father was a fit parent who was able and willing to provide proper care for T.K., Mother proffered that she was prepared to present evidence to the contrary.

---

joint, with or without tie-breaking provisions) and physical custody (how divided, including visitation).

Specifically, Mother proffered that she had witnesses available who would testify that Father was abusive to another child of his and to that child's mother, that he subsequently abandoned that other child, and that he had held a flame to T.K.'s arm—at a time when T.K. could have been no older than three years old—to teach T.K. about fire. Although T.K.'s counsel interprets Mother's statements about the last of these allegations differently, *see* footnote 14 above, Mother's proffered evidence collectively raised at least a material dispute concerning Father's fitness as a parent and whether T.K. would be better off in Father's care than in Mother's.

Third, the bare fact that a parent has been indicated for an instance of neglect does not, by itself, automatically disqualify that parent from maintaining custody.[22] Indeed, even *after* a child has been determined to be in need of assistance, a juvenile court has the discretion to "[n]ot change the child's custody status[.]" Cts. & Jud. Proc. § 3-819(b)(1)(iii). We do not discount the possibility that the facts surrounding even a single incident of abuse or neglect could, by themselves, be dispositive of a parent's ability to care for a child or fitness for custody. However, it is apparent that the circumstances

---

[22] Mother contends that the stipulated facts adopted by the juvenile court identify only a single incident of neglect, in which she left the children with an individual who had been drinking alcohol and who subsequently injured Ta.K. Father and the Department contend that the stipulated facts identify a second instance of neglect, when Mother failed to obtain professional medical attention for Ta.K. after T.K. hit her with a stair railing pole and "cut her eye." However, the stipulation, as negotiated and accepted, does not establish either that Ta.K.'s cut required professional medical attention or that the failure to seek such attention put Ta.K. at risk. The stipulation thus does not itself establish neglect concerning that incident. Regardless, our decision that the juvenile court erred in declining to hold an evidentiary hearing to consider additional evidence related to the custody arrangement that would be in T.K.'s best interest would not change if we considered both incidents to demonstrate neglect.

30

here did not rise to that level. Indeed, there was no request to place T.K. in shelter care, and Mother maintained custody of him throughout the CINA proceedings, apparently without incident. Moreover, the Department planned to recommend that T.K. be placed in Mother's custody under an order of protective supervision if he had been determined to be in need of assistance. In these circumstances, in light of the limited stipulations as to Mother's conduct, the absence of evidence in the record concerning Father, and Mother's proffers regarding evidence she would present, the juvenile court should have held a hearing to receive additional evidence to inform its analysis concerning the custody arrangement that was in T.K.'s best interest.

The Department raises two additional arguments why a best interest hearing was not required here, even though it now agrees that such a hearing would ordinarily be required as part of a court's exercise of its authority pursuant to § 3-819(e). First, the Department argues that § 9-101(b) of the Family Law Article (2019 Repl.) precluded the juvenile court from leaving T.K. in Mother's custody because "there has been no assertion by Mother that despite [her prior] neglect, there is . . . no likelihood of further abuse and neglect." Section 9-101 provides that where a court "has reasonable grounds to believe that a child has been abused or neglected by a party," "the court shall deny custody or visitation rights to that party" unless it "specifically finds that there is no likelihood of further child abuse or neglect by the party." However, although the juvenile court did not explicitly make such a finding, it both permitted T.K. to remain in Mother's custody throughout the CINA proceedings and awarded Mother "reasonable and liberal visitation" with T.K. in its custody order. Assuming that § 9-101(b) is applicable to this CINA proceeding, which all

31

the parties do, neither of those decisions would have been consistent with that provision unless the court had at least implicitly found that there was no likelihood of further neglect by Mother.[23]

Second, the Department argues that the court was not required to hold an evidentiary hearing because, in light of the sustained findings with respect to Mother's neglect of T.K., she and Father were not on "equal footing [ ] in terms of safety[.]"  That, however, does not differentiate this case from any other in which a juvenile court would be considering an award of custody pursuant to § 3-819(e), after finding the prerequisites to the exercise of authority under that provision satisfied.  The statute nonetheless provides the court with discretion whether to make an award of custody, which must be exercised in the best interest of the child after consideration of evidence that is relevant and material to that analysis.

For those reasons, the juvenile court erred in not holding an evidentiary hearing before awarding Father sole legal and physical custody of T.K.  Accordingly, we will reverse the judgment of the Court of Special Appeals and remand to that court with instructions to vacate the juvenile court's order and remand for further proceedings. Because it is now impossible to recreate the situation that existed at the time the court made its award of custody to Father without risking substantial additional and potentially unnecessary upheaval for T.K., pending further proceedings custody should remain with Father, with reasonable and liberal visitation for Mother.  In those further proceedings, the

---

[23] We do not suggest that an *implicit* finding of no likelihood of further neglect is sufficient to satisfy § 9-101(b).

32

court should hold a hearing to receive evidence concerning the custody arrangement that is in T.K.'s best interest and then enter an appropriate custody order.[24]

## CONCLUSION

We hold:

- Section 3-819(e) grants the juvenile court discretion to award custody only if the court, by a preponderance of the evidence: (a) sustains allegations in a CINA petition that are sufficient to support a CINA disposition against one, but only one, parent; and (b) finds that the other parent is able and willing to care for the child;

- If those prerequisites are established, the best interest of the child standard applies to the court's decision whether to exercise its discretion to award custody, and if so, how; and

- A juvenile court must afford a parent who stands to lose custody if the court's discretion under § 3-819(e) is exercised an opportunity to present evidence if, after consideration of the evidence already presented or stipulated at the adjudicatory hearing, there are factual disputes as to any consideration that is material to (a) whether the "other parent" is able and willing to provide proper care or (b) the juvenile court's determination of whether it is in the child's best interest to leave the current custody arrangement in place or to award custody (legal, physical, or both) to the parent against whom allegations were not sustained.

Because the juvenile court did not hold a hearing to allow the parties to present evidence concerning whether Father was able and willing to provide proper care for T.K.

---

[24] As discussed above, if the court had held an evidentiary hearing when the issue was first raised, it should have first determined whether Father was willing and able to provide proper care for T.K. Only if it had determined that he was should the court have proceeded to examine whether it was in T.K.'s best interest to award custody to Father. Cts. & Jud. Proc. § 3-819(e). However, because Father has presumably had custody of T.K. for the duration of the proceedings on appeal, Mother's own circumstances might have changed from those on which the court based its adjudicatory findings, and T.K.'s best interest is paramount, on remand the juvenile court's focus should be exclusively on identifying T.K.'s best interest based on present circumstances.

and the custody arrangement that was in T.K.'s best interest before awarding sole legal and

physical custody to Father, the case must be remanded to that court for further proceedings

as described above.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT TO VACATE THE ORDER OF THE CIRCUIT COURT FOR HOWARD COUNTY SITTING AS A JUVENILE COURT AND REMAND FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT HOWARD COUNTY DEPARTMENT OF SOCIAL SERVICES.**

Circuit Court for Howard County
Case No. C-13-JV-20-000175
Argued: June 2, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 60

September Term, 2021

_____

IN RE: T.K.

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Dissenting Opinion by Hotten, J.
_____

Filed: July 28, 2022

Respectfully, I dissent. The best interest of the child is the paramount consideration in juvenile proceedings. We entrust juvenile courts with making this determination because they are "in the unique position to *marshal the applicable facts, assess the situation, and determine the correct means of fulfilling a child's best interests*." *In re Mark M.*, 365 Md. 687, 707, 782 A.2d 332, 343–44 (2001) (emphasis added). Juvenile courts possess wide discretion in determining the welfare of children and are not bound to any particular list of exhaustive factors. Accordingly, the juvenile court is "not required to recite the magic words of a legal test[] . . . as an adherence to form over substance, [which would] not cause the Genie to appear[,]" and particular words are "neither required nor desired if actual consideration of the necessary legal considerations are apparent in the record." *In re Adoption/Guardianship of Darjal C.*, 191 Md. App. 505, 532, 992 A.2d 503, 519 (2010) (quoting *S. Easton Neighborhood Ass'n, Inc. v. Town of Easton*, 387 Md. 468, 495, 876 A.2d 58, 74–75 (2005)).

In the case at bar, the record demonstrates that the juvenile court considered the best interests of T.K. by awarding custody to the father. The mother stipulated to allegations of neglect, and the Howard County Department of Social Services ("the Department) established that the father was willing and able to assume custody of T.K. Given the unique position of the juvenile court to marshal the applicable facts, assess the situation, and determine the best interests of T.K., it would be detrimental to the welfare of T.K. to require subsequent proceedings to further establish what is already manifest in the record. I would hold that the juvenile court did not abuse its discretion by awarding custody of T.K. to the father, and I would affirm the Court of Special Appeals.

***The best interest of the child was served by awarding custody to the father.***

The purpose of a CINA proceeding is to secure the best interests of the child. *In re Najasha B.*, 409 Md. 20, 33, 972 A.2d 845, 852 (2009) ("The broad policy of the CINA Subtitle is to ensure that juvenile courts (and local departments of social services) exercise authority to protect and advance a child's best interests when court intervention is required."). "[T]he child's welfare is a consideration that is of transcendent importance when the child might . . . be in jeopardy." *Id.*, 972 A.2d at 852 (citation omitted).

The CINA statute also obligates the juvenile court to consider the preservation of the family unit and the fundamental right of parents to have custody and care of their child when conducting a best-interest-of-the-child analysis. Md. Code Ann., Courts and Judicial Proceedings ("Cts. & Jud. Proc.") § 3-802(a)(3); *In re Billy W.*, 386 Md. 675, 683–84, 874 A.2d 423, 428 (2005). In the CINA context, there is a strong presumption that *the best interest of the child is served* by placing the child with a parent. *In re Yve S.*, 373 Md. 551, 572, 819 A.2d 1030, 1043 (2003); *In re Billy W.*, 386 Md. at 685, 874 A.2d at 429 ("[T]he General Assembly has enacted a comprehensive statutory scheme to ascertain whether a child is in need of assistance due to his or her parents' inability or unwillingness to care for him or her. Pursuant to the statute, when the local department of social services receives reports of abuse or neglect, it is *required to . . . render appropriate services in the best interests of the child, including reunifying the child with a parent . . . .*") (emphasis added).

The CINA statute at issue, Cts. & Jud. Proc. § 3-819(e), incorporates the strong presumption that the best interest of a child is served by placing a child with a parent. The

provision affords juvenile courts the discretion to award custody to one parent when allegations of abuse or neglect are sustained against another:

> If the allegations in the petition are sustained *against only one parent of a child, and there is another parent available* who is able and willing to care for the child, *the court may not find that the child is a child in need of assistance*, but, before dismissing the case, *the court may award custody to the other parent.*

Cts. & Jud. Proc. § 3-819(e). (Emphasis added).

Cts. & Jud. Proc. § 3-819(e) permits the juvenile court to promote the best interests of the child by transferring custody to another available parent as long as two necessary conditions are satisfied. First, an allegation of abuse or neglect has been sustained against one parent. Second, there must be another parent who has demonstrated the willingness and ability to care for the child.

When these two conditions are satisfied, the statute does not *obligate* the juvenile court to award custody. There may be circumstances in which the juvenile court is not satisfied with the apparent fitness of the other parent and concludes that a more in-depth best-interest-of-the-child hearing is required. This was not one of those cases.

The Department investigated and was satisfied by the fitness of the father and his capacity to care for T.K. In light of the challenges posed by the COVID pandemic, the Department performed child-protective services clearances of the Father, verified the employment of the Father, searched Georgia court databases, and conducted a video tour of the Father's home and T.K.'s room. The Department presented these findings to the juvenile court. The juvenile court determined, based on the facts presented, that the father was able and willing to care for the child. It would have been unnecessary to conduct a

3

further best-interest-of-the-child analysis when (1) there is a strong presumption that it would be in the best interest of T.K. for the father to have custody, (2) there was nothing presented to the juvenile court that rebutted this strong presumption or the willingness or ability of the father to care for T.K, (3) the fundamental interest of a parent in raising a child would be preserved, (4) and T.K. would be transferred from a home where he suffered neglect to the home of his father.[1] *See* Cts. & Jud. Proc. § 3-802(a) ("The purposes of this subtitle are . . . [t]o conserve and strengthen the child's family ties and to separate a child from the child's parents only when necessary for the child's welfare[.]").

***The juvenile court did not abuse its discretion by awarding custody to the father.***

This Court must review the custody decision of a juvenile court under an abuse of discretion standard of review. *In re R.S.*, 470 Md. 380, 398, 235 A.3d 914, 924 (2020). "[W]e recognize that [these q]uestions . . . are much better decided by the [juvenile courts] than by appellate courts, and the decisions of such [courts] should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." *Id.*, 235 A.3d at 924 (internal quotation marks and citation omitted). "A reviewing court will not disturb findings that fit squarely within the discretion of the [juvenile] court, unless the decision under review is 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what the court deems minimally acceptable.'" *Id.*, 235 A.3d at 924–25 (citations omitted).

---

[1] The juvenile court also found that there was a preexisting relationship between T.K. and the father: "I do recognize . . . that the father is not a stranger to this child . . . because the father was there for the first couple years of this child's life. And this child is . . . four years old at this point. So he's not a stranger[.]"

The decision of the juvenile court to award custody did not constitute a serious error that warranted intervention from this Court. By requiring further proceedings, we potentially uproot and unsettle T.K. who is already living with the father. Another proceeding will not likely affect the ultimate outcome—the award of custody to the father—but cause unnecessary strain to T.K. and expense to all parties involved. The burden of further proceedings undoubtedly factored into the calculus of the juvenile court when it awarded custody to the father pursuant to Cts. & Jud. Proc. § 3-819(e). The General Assembly also undoubtedly weighed these same costs and benefits by enacting a provision that gives the juvenile court the discretion to award custody to a willing and able parent following a sustained allegation of abuse or neglect against another parent.

I am unpersuaded that the interests of justice would be better served by another hearing to permit the mother another opportunity to submit evidence of the father's alleged lack of fitness. The mother was already given such an opportunity during the adjudicatory hearing. The mother submitted no evidence that would impugn the willingness and ability of the father to care for T.K, rather the mother only stipulated to her own record of neglect. This Court employs the deferential abuse-of-discretion standard of review to avoid second-guessing the juvenile court. There is nothing in the record that demonstrates the juvenile court erred in rendering its decision or suggests the result will be different on remand.

I would affirm the Court of Special Appeals and hold that the juvenile court did not abuse its discretion in awarding custody of T.K. to the father. For these reasons, I respectfully dissent.